Argued and submitted May 10, reversed and remanded December 19, 2007

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# SHAWN RAY MOLLER,
*Defendant-Appellant.*

Umatilla County Circuit Court
CF030368; A130630

174 P3d 1063

Jesse Wm. Barton argued the cause and filed the brief for appellant.

Janet A. Metcalf, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman and Ortega,* Judges.

LANDAU, P. J.

---

* Ortega, J., *vice* Riggs, S. J.

## LANDAU, P. J.

Defendant appeals a judgment of conviction for possession of a precursor substance with intent to manufacture methamphetamine, ORS 475.967, conspiracy to manufacture a controlled substance, ORS 161.450, and second-degree criminal trespass, ORS 164.245. He assigns error to the admission of testimony that he had exercised his constitutional right to refuse to consent to a search of his car, to the admission of a laboratory report concerning the nature of the substances found in the car, to the lawfulness of the trial court's jury instructions, and to the lawfulness of the sentence that he received. We conclude that defendant is correct that the trial court erred in admitting the testimony that he had refused to consent to the search of his car. Because that assignment is dispositive, we do not reach his other assignments of error.

The relevant facts are not in dispute. Trooper Zeckman observed a car driving late at night up the driveway of a parcel of rural private property at which tanks of anhydrous ammonia were located. Zeckman was concerned because she had encountered people attempting to steal ammonia from the tanks in the past. Zeckman called for back-up and, when back-up arrived, she approached the car. At that point, Zeckman observed defendant in the driver's seat and two other individuals standing next to the ammonia tanks. Zeckman ordered all three individuals to the ground and asked for identification. Defendant responded that his identification was on his car visor and that Zeckman could retrieve it.

Zeckman went to the car to retrieve defendant's identification. When she reached the car, she asked defendant where the trunk release was located. Defendant replied, "Ma'am, I am not giving you permission to search my vehicle." Zeckman then searched the area under the car and areas that she considered in plain view. She then opened the trunk of the car and found a container of toluene, which she knew was used in the manufacture of methamphetamine, along with two suitcases bearing defendant's address and containing 69 boxes of cold pills.

At trial, defendant denied any knowledge of the contents of the trunk or of any agreement to manufacture methamphetamine. He insisted that, although his two passengers may have been involved in the production of methamphetamine, he was not. In his defense, he offered, among other things, the testimony of one of the two passengers in the car at the time of the arrest that the passenger had packed the suitcases and that defendant had no knowledge of theircontents. In response, the state offered the testimony of Zeckman that defendant had refused to consent to the search of his car. Defendant objected on the ground that it is impermissible to comment on the exercise of his constitutional rights to withhold his consent to search his vehicle. The trial court overruled the objection and allowed the testimony. In closing argument, the prosecutor argued to the jury that defendant's refusal to consent was "suspicious" and that he apparently "didn't want Trooper Zeckman looking in that trunk where everything else was found." The jury convicted defendant by a 10-2 vote.

On appeal, defendant renews his objection to the admissibility of the trooper's testimony concerning his refusal to grant consent to search his car. According to defendant, the testimony violated his right against self-incrimination guaranteed by Article I, section 12, of the Oregon Constitution. The state concedes that, ordinarily, it is reversible error to allow into evidence precisely the sort of testimony that it offered through Zeckman in this case. The state never theless insists that there was no reversible error in this case because defendant "opened the door" to that evidence by claiming that he knew nothing of the contents of his car. "Given defendant's theory of the case," the state argues, "he opened the door to evidence that would counter his theory of the case and that would tend to prove that he knew what was in the trunk of the car."

■ It is a well-established rule in Oregon that a person's refusal to consent to something he or she is not legally required to do is not admissible under Article I, section 12, of the Oregon Constitution, as it implicates the constitutional right to remain silent. *State v. Hayes,* 135 Or App 506, 511, 899 P2d 1198 (1995); *State v. Green,* 68 Or App 518, 525-26,

684 P2d 575 (1984). As the Supreme Court explained in *State v. Larson*, 325 Or 15, 22-23, 933 P2d 958 (1997),

> "the Oregon Constitution grants a criminal defendant the right to remain silent. In *State v. Wederski*, 230 Or 57, 62, 368 P2d 393 (1962), this court held that the Oregon Constitution does not permit a prosecutor to draw the jury's attention to a defendant's exercise of the right to remain silent. The United States Supreme Court also has held that the federal constitution prohibits a prosecutor from pointing out that a defendant has exercised his or her right to remain silent. *See Griffin v. California*, 380 US 609, 615, 85 S Ct 1229, 14 L Ed 2d 106 (1965) (so holding). A defendant's right to remain silent is meaningless if the state may refer to the defendant's silence with impunity."

In fact, the Supreme Court has stated that "it is usually reversible error to admit evidence of the exercise by a defendant of the rights which the constitution gives him if it is done in a context whereupon inferences prejudicial to the defendant are likely to be drawn by the jury." *State v. Smallwood*, 277 Or 503, 505-06, 561 P2d 600, *cert den*, 434 US 849 (1977).

■        In this case, defendant exercised his constitutional right to refuse consent to a warrantless search of his car. And, the admission of evidence of that refusal invited inferences prejudicial to his defense. It would seem necessarily to follow that the trial court erred in admitting the evidence of defendant's refusal. As we have noted, the state concedes that ordinarily it is erroneous to admit evidence of a defendant's refusal to consent to a search. The state nevertheless insists that no reversible error occurred in this case because defendant, by insisting that he knew nothing of the contents of the car, invited the state to disprove the assertion with evidence of his refusal. Quoting *Green*, the state contends that evidence of defendant's refusal to consent to the search "is relevant in that it shows that he believed that the results [of a search] would tend to incriminate him and thus shows that he believed that he was guilty." 68 Or App at 522.

The state does not explain, however, and we do not understand, how a defendant "opens the door" to testimony about a decision to invoke his constitutional rights merely by

denying that he committed the crime charged. The state's reliance on *Green* certainly does not provide the answer to that question. The portion of the decision that it quotes is taken from this court's explanation of why evidence of a defendant's exercise of constitutional rights *cannot* be admitted, *i.e.*, precisely because it may give rise to an inference that the defendant believes that he or she had something to hide. It is, we explained in the balance of the paragraph from which the state derives its quotation,

> "testimony concerning the defendant's belief on the central issue of the case. For him to reveal his inner thoughts [by electing, in that case, to refuse to take a field sobriety test] is necessarily to make a communication, whether by words or by actions. For the state to compel a defendant to reveal those thoughts is to require him to testify against himself and thus to violate Article I, section 12, of the Oregon Constitution."

*Id.* at 522-23.

The state points to the fact that, at trial, defendant himself cross-examined a laboratory safety officer who had been called to the scene of the search about other aspects of the encounter. As the state acknowledges, however, at that point, the evidence about defendant's refusal to consent to the search already had been introduced and, moreover, the cross-examination was about matters other than the search or his refusal to consent to it.

The state argues that, even if the trial court erred in admitting the evidence of defendant's refusal to consent to the search, the admission of that evidence was harmless in light of the fact that he had been "caught red handed" with a large quantity of methamphetamine-production materials. Defendant argues that the admission of the evidence of his refusal was not harmless in light of the fact that it was central to the state's case and in light of the close jury vote by which he was convicted.

We will affirm a judgment of conviction notwithstanding the erroneous admission of evidence if there is little likelihood that the admission of the evidence affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). "If erroneously admitted evidence relates to a 'central factual

issue' to the case, it is more likely to have affected the determination than if it dealt with a tangential issue." *State v. Roller*, 201 Or App 166, 173, 118 P3d 804 (2005).

■ Defendant has the better of the harmless error arguments. The evidence—by the state's own characterization—concerns a central factual issue, that is, defendant's knowledge that the car contained substantial quantities of precursor materials to the production of methamphetamine. Defendant's refusal to consent to the search was a prominent part of the state's case in closing argument. Moreover, defendant's knowledge of the contents of the car was contested at trial. One of defendant's passengers, for example, testified that defendant knew nothing of the materials found in the car. On that record, we cannot say that there is little likelihood that the admission of the evidence of defendant's refusal to consent to the search of the car affected the outcome of the case.

Reversed and remanded.