Submitted July 28, 2009, affirmed February 17, 2010

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DEBORAH KAY CLARK,
aka Deborah K. Clark,
*Defendant-Appellant.*

Umatilla County Circuit Court
CF050319; A136893

226 P3d 120

Peter Gartlan, Chief Defender, Appellate Division, and Robin A. Jones, Senior Deputy Public Defender, filed the brief for appellant.

John R. Kroger, Attorney General, Erika L. Hadlock, Acting Solicitor General, and Rene C. Holmes, Senior Assistant Attorney General, filed the brief for respondent.

Before Rosenblum, Presiding Judge, and Brewer, Chief Judge, and Riggs, Senior Judge.

ROSENBLUM, P. J.

**ROSENBLUM, P. J.**

Defendant appeals a conviction for possession of a controlled substance, *former* ORS 475.992(4)(b) (2003).[1] She assigns error to the trial court's denial of her motion for a mistrial. She contends that, in closing arguments, the prosecutor improperly commented on her right to remain silent following her arrest and at trial by telling the jury that there was no testimony that defendant had claimed that the controlled substances at issue were not hers. We conclude that it was unlikely that the jury understood the prosecutor's comment as a reference to the fact that defendant did not testify at trial. We further conclude that defendant opened the door to the prosecutor's comment on her silence following her arrest. We therefore affirm.

The facts are not in dispute. Defendant was a passenger in a pickup truck that was stopped for a traffic infraction. During the stop, the officer who had stopped the pickup, Officer Palmer, believed that defendant had given him a false name and also discovered that a warrant for defendant's arrest was outstanding. He placed her under arrest based on the warrant and for providing him with a false name. Palmer noticed a backpack in the bed of the pickup. He asked the driver if it belonged to him. The driver said that it belonged to defendant, so Palmer asked defendant if it was hers. She said that it was. Palmer took defendant and the backpack to the police station. At the station, he searched the backpack for evidence of defendant's identity. He found, inside a wallet, a small, blue Ziploc bag that appeared to him to contain methamphetamine residue. Palmer placed the blue bag in an evidence bag to be sent to the Oregon State Police crime lab. The crime lab later confirmed Palmer's suspicion that the blue bag contained methamphetamine.

At trial, Palmer testified about the above facts on direct examination. On cross-examination, defense counsel asked Palmer,

---

[1] *Former* ORS 475.992 was renumbered as ORS 475.840 in 2005 and amended by Oregon Laws 2005, chapter 708, section 39. That amendment does not affect this appeal.

"[Y]ou did not show [defendant] the evidence that you had retrieved; is that correct?

"A    I do not recall if I did or not.

"Q    So it could be the case that you found this in this wallet-style purse, marked it and placed it in the evidence locker without [defendant] ever having seen it; would that be fair to say?

"A    That was possible.

"Q    Okay. And you didn't confront her with this and try to obtain a statement; is that correct as well?

"A    No. I advised her of her charges for the Possession of Controlled Substance, advised her what I had found, and then, also, for the false information."

After Palmer's testimony concluded, two other witnesses testified for the state about the crime lab's testing of the blue bag and the chain of custody of the bag. Defendant rested without presenting any evidence. The parties then proceeded with closing arguments.

The prosecutor began his closing argument as follows:

"Good afternoon. The outline I gave you at the start of the day, it started with a traffic stop and ended with the testimony I promised from the Oregon State Police crime lab scientist, Tracy Rose.

"That's been the stream of events, and it's been consistent with what I anticipated and, hopefully, with what you anticipated as well, based on my opening statement. I thank you for your attention * * *.

"It all centered around the contents of a backpack, the Defendant's backpack, and the testimony today established that the Defendant claimed that backpack. She told Officer Palmer that that was her backpack, it wasn't the driver's backpack.

"And Officer Palmer testified that he found the controlled substance in the backpack, and while he may not have shown the little blue baggie to the Defendant, Officer Palmer testified that he told the Defendant what had happened. Controlled substances, or [what] he supposed to be

controlled substances, based on his training and experience, were found in the backpack. There was no testimony that the Defendant disputed that, claimed that someone else owned it, claimed that it wasn't hers. No testimony that when—"

Defendant's counsel interrupted at that point with an objection. The jury was sent out, and counsel moved for a mistrial, arguing that the prosecutor had commented on defendant's right not to testify and right to remain silent following her arrest. Counsel argued that "[t]he jury is left with the perception * * * that she should have said something, that she should have told the officer that it wasn't hers * * *." He contended that the prosecutor's statement was "not a bell that you can unring," and he asked that the case be retried before a different jury. The prosecutor responded that he was "commenting on Officer Palmer's testimony, if anything, commenting on the fact that Officer Palmer did not confront the Defendant with the actual blue baggie, comment that—what his testimony did or did not include."

The trial court denied the motion, stating:

"We're talking about a dotted-line inference from the fact that the officer failed, which is a gaping wound in the Court's mind as to why he failed to present the baggie to the Defendant, but that's—I don't see how that becomes a commentary on her right to remain silent here today, which would be the major, major problem not so much during the course of an investigation. [*sic*] But if she takes the Fifth Amendment, that would be different."

The court instructed the prosecutor not to address the issue further in the balance of his closing argument. The arguments proceeded without any further objections. The jury found defendant guilty.

■ On appeal, defendant assigns error to the denial of the motion for a mistrial. She renews the argument that the prosecutor improperly commented on her right to remain silent. She contends again that the prosecutor's argument constituted direct comments on the fact that she did not protest her innocence to Palmer or testify at trial in her own behalf to deny ownership of the blue bag and its contents. She

argues that the trial court erred in concluding that the prosecutor's comments were directly addressed only to her failure to deny possession of the blue bag during the investigation, rather than being addressed to her failure to testify at trial. She also argues that, even if the court were correct, commenting only on the fact that she remained silent following her arrest would, by itself, warrant a mistrial.

We reject defendant's contention that the prosecutor's argument was a comment on her right not to testify at trial. Granted, taken alone, the prosecutor's statement that "[t]here was no testimony" that defendant denied possession of the blue bag is ambiguous: It could be understood as a reference to the fact that defendant did not testify or as a reference to Palmer's testimony. However, immediately before the prosecutor made the statement, he was discussing Palmer's testimony, and he told the jury, "Officer Palmer testified that he found the controlled substance in the backpack, and while he may not have shown the little blue baggie to the Defendant, Officer Palmer testified that he told the Defendant what had happened." In that context, the jury likely understood the statement that "[t]here was no testimony that the Defendant disputed that, claimed that someone else owned it, claimed that it wasn't hers" as a reference to what Palmer's testimony did not include—that is, it pointed out that Palmer did not testify that defendant had made exculpatory statements when he told her what he had discovered. The trial court, which was in the best position to assess the effect of the statement on the jury, understood it that way. *See State v. Wright*, 323 Or 8, 12, 913 P2d 321 (1996) (the trial court "is in the best position to assess the impact of the complained-of incident"). In our view, the chance that the jury would understand the statement as a reference to the fact that defendant did not testify is too remote to require a mistrial.

■  We turn to defendant's argument that commenting on the fact that she remained silent following her arrest warranted a mistrial. The privilege against self-incrimination, guaranteed by Article I, section 12, of the Oregon Constitution and the Fifth Amendment to the United States Constitution, applies equally to trial, *State v. Wederski*, 230 Or 57, 62, 368 P2d 393 (1962), and to post-arrest interrogation, *State v. Mullenberg*, 112 Or App 518, 829 P2d 98 (1992). In both

instances, a jury might infer from the defendant's silence that the defendant is guilty. However, because the silence may simply be a product of the exercise of the right to remain silent, it is "insolubly ambiguous." *Doyle v. Ohio*, 426 US 610, 617, 96 S Ct 2240, 49 L Ed 2d 91 (1976); *see also Mullenberg*, 112 Or App at 521 ("A defendant's reason for exercising her right to remain silent is irrelevant."). That is, it is speculative to infer that the defendant remained silent because he or she is guilty. Because the jury might draw that inference, the state may not call attention to the defendant's silence in either instance. *See Wederski*, 230 Or at 62 (holding that a mistrial was required because the prosecutor pointed out to the jury that the defendant had not testified); *Mullenberg*, 112 Or App at 520-21 (holding that a mistrial was required because the prosecutor told the jury that the defendant had refused to say anything to a police officer following her arrest); *cf. State v. Ragland*, 210 Or App 182, 149 P3d 1254 (2006) (holding that a mistrial was required because the prosecutor used the defendant's post-arrest silence to impeach her trial testimony). Thus, comments that implicate only a defendant's post-arrest silence generally are improper, contrary to the trial court's conclusion.

■     We nevertheless conclude that, under the circumstances in this case, the prosecutor's comment did not warrant a mistrial. We will not gratuitously reverse a trial court if its ruling can be affirmed on an alternative ground. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (setting forth principles and requirements for application of "right for the wrong reason" rule); *Frady v. Morrow*, 169 Or App 250, 254, 9 P3d 141 (2000) (a trial court will not be "gratuitously reversed," and, if the trial court's result ultimately is correct, it will be affirmed on alternative grounds to avoid an unnecessary remand). We conclude that defense counsel opened the door to the prosecutor's comment when he asked Palmer, "And you didn't confront her with this and try to obtain a statement; is that correct as well?" That question was part of a line of cross-examination directed at showing that Palmer had not followed reliable procedures in handling the evidence and that the procedure he did follow did not confirm that defendant knew about the blue bag or the wallet in which Palmer had

found it. The question implied (1) that, because Palmer failed to follow ordinary procedures by not showing defendant the blue bag, defendant was denied the opportunity to make a statement about the bag, and (2) that, if she had been given that opportunity, she would have denied that the bag was hers or made some other exculpatory statement about it.

Our conclusion that counsel's question opened the door to the prosecutor's closing argument is guided by *State v. Guritz*, 134 Or App 262, 894 P2d 1235, *rev den*, 321 Or 560 (1995). In that case, the defendant was convicted of sodomizing his daughter. During the investigation of the offense, he was interviewed by the police after he signed a form acknowledging that he had been given *Miranda* warnings. After a brief discussion, he terminated the interview by invoking the right to remain silent and the right to an attorney. At trial, the defendant testified that, on the night of the alleged offense, his daughter was feverish and very sweaty, that he had to dry her with a towel and change her clothes, and that she had apparently misunderstood his acts. *Id.* at 264.

In closing argument, defense counsel asserted that the police had failed to adequately investigate the charge against the defendant. Among other things, he challenged the quality of the police interview with the defendant. Counsel told the jury that the prosecutor might argue in rebuttal that the defendant had not told Detective McDonald, who had conducted the interview, that his daughter was sick on the night in question or that he had to towel her dry. Counsel sought to forestall that argument, noting that, during the trial, the prosecutor had never asked the detective what he had told the defendant during the interview. Counsel implied that the defendant did not have the opportunity to tell the detective the exculpatory story because the detective had not given him sufficient information about the allegation. Counsel asked the jury, " 'Did Detective McDonald tell him the date of the alleged abuse? We don't know. Tell him when, what, where? We don't know.' " *Id.* at 269.

In rebuttal, the prosecutor noted that the defendant had told the detective that he knew what the allegation was before he read and signed the form with the *Miranda*

warnings. The prosecutor told the jury that the statement "anything you say can be used in court" in the *Miranda* warnings had informed the defendant that, " '[i]f there is something that he needs to tell that's important about that night, that's his chance,' " adding, " 'And members of the jury, he did not tell those facts.' " *Id.* The defendant moved for a mistrial on the ground that the prosecutor had impermissibly commented on his invocation of the right to remain silent. The trial court denied the motion. On appeal, we held that, although comment by the prosecutor on a defendant's silence ordinarily is improper under both the state and federal constitutions, the prosecutor has the right "to reply to argument made by opposing counsel, and, in doing so, statements may be made which otherwise would be improper." *Id.* at 270. We concluded that defense counsel had

> "put the state in the position of having to defend the brevity of McDonald's interview without saying that it was defendant who cut it short by invoking his constitutional right to proceed no further. Defense counsel effectively precipitated the prosecutor's remarks, and, under the circumstances, defendant now should not be heard to complain of the consequences."

*Id.*

In this case, as in *Guritz*, defense counsel put the state in the position of having to challenge the implication that defendant would have made an exculpatory statement to the police if she had been given the opportunity. In closing argument, the prosecutor told the jury that, "while he may not have shown the little blue baggie to the Defendant, Officer Palmer testified that he told the Defendant what had happened," and that "[t]here was no testimony that the Defendant disputed that, claimed that someone else owned it, claimed that it wasn't hers." The first statement, referring to Palmer's testimony that he had "advised [defendant] what [he] had found," pointed out to the jury that defendant did, in fact, have an opportunity to make an exculpatory statement. In light of the impression that defense counsel's question created, defendant cannot complain that the prosecutor pointed out to the jury that she did not make use of that opportunity.[2]

---

[2] We acknowledge that the relative timing of defense counsel's opening of the door and the prosecutor's response was different than in *Guritz*. In that case,

Federal case law leads to the same conclusion. In *Doyle*, the Supreme Court held that using a defendant's post-arrest silence to impeach his or her exculpatory testimony at trial violates due process, but it explained in a footnote to that holding that post-arrest silence can be used to challenge implications made by the defendant about his or her behavior after arrest:

> "It goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest. In that situation the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest."

*Doyle*, 426 US at 619 n 11.

The Second Circuit applied that reasoning in *United States v. Matthews*, 20 F3d 538 (2d Cir 1994). In that case, the defendant was charged with bank robbery. He did not testify at his trial but argued, through his attorney, that he had been completely open with the authorities during their investigation of him, asserting that he had spoken freely with the police after his arrest and had voluntarily allowed them to search his car. He also called as a witness an FBI agent who had questioned him. Defense counsel asked the agent if the defendant had agreed to take a lie detector test. The agent answered, " 'Initially he did.' " *Id.* at 552. Counsel ended his questioning there. On cross-examination, the prosecutor asked the agent whether there had been further discussion concerning a lie detector test. When the agent said that there was, the prosecutor asked what the defendant had said. The agent testified,

> " 'Well, initially he said he would take a lie detector test. We were at the Syracuse Police Department. I then told him we

---

counsel opened the door in closing argument, and the prosecutor's response followed directly thereafter in rebuttal, whereas, in this case, counsel opened the door while cross-examining a witness, and the prosecutor responded in closing argument. That difference in timing does not affect our conclusion, however. What matters is that the defense raised the issue before the jury, giving the prosecutor the right to respond. Although the prosecutor could have responded sooner—on redirect examination—we see no reason that the response could not come during closing argument.

have a polygraphist outside, a Syracuse police officer, that could do it right now and he said I would like to talk to an attorney and I ceased the interview.' "

*Id.* In closing arguments, the prosecutor stated, " 'Special Agent Arena asked if [the defendant] would take a polygraph exam. He said he would. He testified that he told him they had a polygrapher right outside, that [the defendant] said he wanted to talk to an attorney and that was the end of that.' " *Id.* at 551.

The defendant argued on appeal that the prosecutor's closing argument denied him a fair trial. Citing the footnote in *Doyle*, the court concluded that neither the cross-examination nor the closing argument "urg[ed] the jury to infer [the defendant's] guilt from his refusal to take a lie detector test or his invocation of his right to counsel." *Id.* at 552. Rather, the court held that "they appear[ed] to have been offered simply as a specific rebuttal to [the defendant's] attempt to create the impression that he had been unqualifiedly willing to take a lie detector test." *Id.*

In this case, as in *Matthews*, defendant's counsel sought to create the impression that defendant would have given the police exculpatory information if given the opportunity. The prosecutor was permitted to challenge that impression by pointing out that she did have an opportunity and did not take it.

Defendant notes that, in *State v. Moller*, 217 Or App 49, 53-54, 174 P3d 1063 (2007), we held that the defendant's testimony at trial that he was not aware that incriminating evidence was in his car did not open the door to evidence that he had refused to consent to a warrantless search of the car. According to defendant, if an actual denial of knowledge of incriminating evidence does not open the door to comments about a defendant's exercise of constitutional rights, the mere implication that a defendant *might* have denied such knowledge if given the opportunity also does not open any such door.

Defendant's reliance on *Moller* is misplaced. A defendant's exculpatory statements at trial do not open the door to evidence or comments about earlier invocations of constitutional rights, because such exculpatory statements

do not give the jury any impression about what the defendant did or might have done before trial, and thus do not put the state in the position of needing to challenge such impressions. We reject defendant's argument without further discussion.

Because the prosecutor's comment in his closing argument was not improper under the circumstances, it did not provide a ground for granting a mistrial. It follows that the trial court did not abuse its discretion in denying defendant's motion.

Affirmed.