Submitted August 28, 2013, reversed and remanded July 9, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ADRIAN MENDOZA,
*Defendant-Appellant.*

Multnomah County Circuit Court
101034155; A148842

331 P3d 1059

Peter Gartlan, Chief Defender, and Morgen E. Daniels, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Douglas F. Zier, Senior Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Schuman, Senior Judge.

SCHUMAN, S. J.

## SCHUMAN, S. J.

Defendant was convicted of first-degree forgery, ORS 165.013(1), for uttering a counterfeit $50 bill.[1] At trial, the prosecutor elicited testimony from the arresting officer that defendant, when asked to allow the officer to inspect the contents of his pocket, refused to do so. The officer also testified that "a normal person" would have permitted the officer to conduct that inspection. On appeal, defendant argues that allowing the testimony violated his right against self-incrimination guaranteed by Article I, section 12, of the Oregon Constitution. We agree and therefore reverse.

The following facts are undisputed. Defendant and some friends were at a bar in downtown Portland when defendant paid for two drinks with a $50 bill. The waitress was suspicious because the bill had an unusual feel. Using a "counterfeit pen" that can apparently detect fake currency, the waitress observed that the pen test yielded a darker line than she was accustomed to seeing. She took the bill to her boss. Her boss conducted the pen test as well, and, noting that the bill had no watermark, he satisfied himself that the bill was not genuine currency. The waitress then returned the bill to defendant without incident; meanwhile, the owner called the police. When the officer arrived, he asked defendant what had happened, and defendant candidly told him that he had tried to pay for his bar tab with what turned out to be, unbeknownst to him at the time, a counterfeit bill. The officer then asked defendant if he had any other bills, and defendant pulled a crumpled wad of cash from his pocket.

---

[1] ORS 165.013(1) provides, in part:

"A person commits the crime of forgery in the first degree if the person violates ORS 165.007:

"(a) And the written instrument is or purports to be any of the following:

"(A) Part of an issue of money[.]"

ORS 165.007(1) provides, in part:

"A person commits the crime of forgery in the second degree if, with intent to injure or defraud, the person:

"* * * * *

"(b) Utters a written instrument which the person knows to be forged."

ORS 165.002(7) provides:

"To 'utter' means to issue, deliver, publish, circulate, disseminate, transfer or tender a written instrument or other object to another."

The officer asked to inspect it, but defendant refused. He then put the money back in his pocket and asked the officer if he was under arrest. The officer replied that he was not. At that point, defendant nonetheless handed the officer a counterfeit $50 bill. The officer believed that the bill was, indeed, fake and asked defendant if he had any other $50 bills in his pocket. Defendant replied "dismissive[ly]" that he did not, but the officer arrested him anyway. In a search incident to that arrest, the officer found additional counterfeit bills.[2]

At a pretrial motion *in limine* hearing, defendant moved to exclude testimony by the arresting officer and comments by the prosecutor regarding defendant's refusal to allow the officer to inspect the contents of his pocket. The court denied defendant's motion. At trial, the officer testified about defendant's refusal; the officer also testified, on cross-examination, that he believed that "a normal person" would have allowed the search. Further, during closing argument, the prosecutor called the jurors' attention to defendant's refusal and asked them how they would have acted under similar circumstances. Defendant was subsequently convicted of forgery; an additional charge of criminal possession of a forged instrument was, according to the judgment, "disposed with no conviction" and "merged with" the forgery conviction. This appeal ensued.

It is well settled that "a person's refusal to consent to something he or she is not legally required to do is not admissible under Article I, section 12, of the Oregon Constitution, as it implicates the constitutional right to remain silent." *State v. Moller*, 217 Or App 49, 52, 174 P3d 1063 (2007) (citing cases). When asked to allow the inspection of the contents of his pocket, defendant was not legally required to comply, and the state does not contend otherwise. Rather, the state makes the following arguments as to why the general rule does not apply in this case.

First, the state argues that the officer's testimony that "a normal person" would have consented was invited error, because the testimony occurred on cross-examination

---

[2] Defendant does not challenge the legality of the search.

by defense counsel. Even if that were a valid point, it nonetheless leaves intact the officer's testimony under questioning by the prosecutor that defendant refused to consent to perform an act that he was not legally required to perform.

Second, the state maintains that, even if admitting the testimony was error, it was harmless, because it was not "done in a context whereupon inferences prejudicial to the defendant are likely to be drawn by the jury." *State v. Smallwood*, 277 Or 503, 505-06, 561 P2d 600, *cert den*, 434 US 849 (1977). In *Smallwood*, the supposedly prejudicial testimony was that the defendant, accused of murder, had asserted his right to have his attorney present during a court-ordered psychiatric examination "as well as his right not to answer questions posed by the psychiatrist concerning the particular acts with which he was charged." *Id.* at 505. The court rejected the defendant's argument for several reasons, most significantly that the feared inference would have been that the defendant killed the victim, and drawing that inference would have had no prejudicial effect because the defendant never denied that act. The court also noted that the "prosecution did not argue to the jury that any particular inference should have been drawn, and the trial court specifically cautioned the jury not to draw any inference as to defendant's guilt or innocence" based on his request for legal representation and his assertion of the right not to answer particular questions. *Id.* at 506.

The present case is easily distinguished. Defendant's defense was that he did not know that the currency was counterfeit. Thus, his refusal to allow the officer to inspect the bills went to the heart of defendant's case; the inference would be that he could only want to keep the bills from the officer because he knew they were fake. Further, the prosecutor emphasized defendant's refusal in closing, and the court did not instruct the jury to disregard any inferences of guilty knowledge that might be drawn from defendant's refusal. This case presents a situation like the one in *State v. Veatch*, 223 Or App 444, 196 P3d 45 (2008). In that case, the prosecution elicited testimony that the defendant in a driving under the influence of intoxicants (DUII) case had invoked his right to counsel when asked if he would submit to a breath test. We stated that "under the circumstances, a

jury would likely infer that a person arrested for DUII would not ask for an attorney unless he or she was concerned about failing the breath test[.]" *Veatch*, 223 Or App at 460. Here, the logical inference that the jury was likely to draw was that defendant's refusal to let the officer inspect the bills was a tacit admission of guilt. In short, we conclude that the evidence of defendant's constitutionally permitted refusal to submit to the inspection of the contents of his pocket was inadmissible, and admitting it could likely have created an inference that tended to negate the core of his defense.

Reversed and remanded.