486                    March 5, 2025                    No. 192

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JEFFREY JAMES MICHAEL TSCHIDA,
*Defendant-Appellant.*

Washington County Circuit Court
22CR25351; A180457

Eric Butterfield, Judge.

Submitted October 15, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Carla Edmondson, Deputy Public Defender, Oregon Public Defense Commission, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Hellman, Judge, and Mooney, Senior Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Defendant challenges his conviction for driving while under the influence of intoxicants (DUII), ORS 813.010. In three assignments of error, defendant challenges the admission of body camera video that, in defendant's view, showed his refusal to perform field sobriety tests (FSTs), cross-examination concerning his refusal, and the denial of his motion for a mistrial. For the reasons below, we affirm.

*Body camera video.* In his first assignment, defendant argues that the trial court plainly erred in allowing the state to introduce body camera video evidence of his refusal to perform FSTs because "[u]nder ORS 813.135 and ORS 813.136, [the deputy's] failure to advise defendant of the consequences of his refusal rendered his refusal inadmissible." Because defendant did not object on that ground when the video evidence was published for the jury, we review for plain error.

> "An error constitutes a plain error if (1) it is an error of law; (2) the legal point is obvious, not reasonably in dispute; and (3) the error appears on the record, meaning that the appellate court must not need to go outside the record to identify the error or choose between competing inferences, and the facts constituting the error must be irrefutable."

*State v. Wiltse*, 373 Or 1, 3, 559 P3d 380 (2024) (internal quotation marks omitted). "If an error constitutes a plain error, then, at the second step of the plain-error analysis, an appellate court determines whether to exercise its discretion to reverse based on the error." *Id.* at 10.

During the state's case-in-chief, the trial court admitted into evidence a redacted version of the video from the arresting deputy's body camera, and the state published it for the jury. In the video, the deputy asks defendant if he would take FSTs. Defendant answers, "Well. I don't know how they will turn—the tests will turn out." However, the transcript of the proceedings prepared for this appeal displays defendant's answer as "*No.* I don't know how they will turn—the tests will turn out." (Emphasis added.) Defendant relies on that transcript text to argue that the state impermissibly introduced evidence of his refusal to take FSTs.

We conclude that the trial court did not plainly err. The evidence that the state presented at trial was the body camera video itself—not a transcript of the video—so the jury heard defendant's recorded answer, "Well. I don't know how they will turn—the tests will turn out." Therefore, it is not "obvious" or beyond reasonable dispute that defendant's answer was a clear statement of refusal to perform FSTs. In addition, the error is not apparent on the face of the record without having to "choose between competing inferences." *Wiltse*, 373 Or at 3. Indeed, the state and defendant had pretrial discussions about redacting the video and defendant could have declined to object to the statement precisely because his answer was *not* a clear statement of his refusal to perform FSTs. *See id.* at 21 (explaining that, in some cases, an asserted error may not be apparent on the face of the record when the defendant may have "taken steps to authorize the trial court's actions"). Because the trial court did not plainly err when it admitted the video evidence of defendant's statement, "Well. I don't know how *** the tests will turn out," we reject defendant's first assignment of error.[1]

*Cross examination about refusal to perform FSTs.* In his second assignment of error, defendant argues that the trial court erred when it permitted the state to impeach him with his refusal to perform FSTs. Specifically, defendant argues that the deputy violated ORS 813.135 and ORS 813.136 and Article I, section 12, of the Oregon Constitution.[2]

---

[1] For the same reason, we reject the argument in defendant's supplemental opening brief, which pertains only to his first assignment of error. Although that argument focuses on the deputy's request for defendant to perform FSTs, the underlying premise of that argument is that the trial court admitted evidence of defendant's refusal to perform FSTs during the state's case-in-chief.

[2] ORS 813.135 provides in part that a person who refuses to consent to FSTs "shall be informed of the consequences of failing to physically submit to those tests under ORS 813.136."

ORS 813.136 provides:

"If a person refuses or fails to physically submit to field sobriety tests as required by ORS 813.135 after the person has been informed of the consequences of refusing to submit, evidence of the person's refusal or failure to submit is admissible in any criminal or civil action or proceeding arising out of allegations that the person was driving while under the influence of intoxicants."

Article I, section 12, provides that "[n]o person shall be put in jeopardy twice for the same offense, nor be compelled in any criminal prosecution to testify against himself."

We begin with defendant's statutory argument. Assuming, without deciding, that evidence of defendant's refusal to perform FSTs was inadmissible on statutory grounds, we conclude that defendant opened the door to admission of that evidence. During defendant's direct examination, the following exchange occurred:

"[DEFENSE COUNSEL]:    [Defendant], were you willing to do whatever—

"[DEFENDANT]:    Yeah.

"[DEFENSE COUNSEL]:—the hospital (indiscernible)?

"[DEFENDANT]: Yeah. I wanted to clear my name, because—

"[DEFENSE COUNSEL]: If they asked to get a blood draw, would you have—

"[DEFENDANT]:    Yeah. If need be.

"[DEFENSE COUNSEL]:    Okay.

"[DEFENDANT]:    Like I said, I'd do anything to clear my name."

Because "defendant's own inquiry on direct examination into the contents of otherwise inadmissible statements open[ed] the door to further inquiry on cross-examination relating to those same statements," *State v. Miranda*, 309 Or 121, 128, 786 P2d 155, *cert den*, 498 US 879 (1990), the state was permitted to cross-examine defendant about that refusal. Indeed, prohibiting those questions would have misled the jury. *See* Laird C. Kirkpatrick, Oregon Evidence § 402.04, 188 (6th ed 2013) ("The courts have tended to allow subsequent inadmissible evidence only in situations where it is truly necessary to prevent unfairness or misleading of the jury on a significant issue."); *see also State v. Apodaca*, 291 Or App 268, 277, 420 P3d 670 (2018) (concluding that the state could introduce evidence of a defendant's prior bad acts to "negate or counterbalance" a potentially misleading impression created by the defendant's cross-examination of a witness). The trial court did not err.

We now turn to defendant's constitutional argument that his "refusal was obtained in violation of his Article I,

section 12, right against self-incrimination." Citing *State v. Finonen*, 272 Or App 589, 356 P3d 656 (2015), defendant contends that the state could not impeach him with his refusal to take the tests—even if he opened the door—because his refusal was the result of invoking his right against self-incrimination under Article I, section 12.[3] We first observe that this record is not clear whether defendant did, in fact, invoke his Article I, section 12, rights, because there is no testimony or evidence about what defendant said to the deputy. Instead, we have only the attorneys' conflicting representations of what occurred.

But even assuming that defendant invoked his Article I, section 12, rights, the trial court did not err in permitting the cross-examination. A prosecutor can impeach a defendant with silence if the defendant opens the door by calling into question the sufficiency of the police investigation or suggesting that the officers did not give defendant an opportunity to provide exculpatory information. *State v. Clark*, 233 Or App 553, 559-60, 226 P3d 120 (2010); *State v. Guritz*, 134 Or App 262, 894 P2d 1235, *rev den*, 321 Or 560 (1995). *Finonen* is thus inapplicable because, unlike *Finonen*, this case does not involve the use of defendant's statements that were obtained in violation of his constitutional rights.

*Motion for mistrial*. In his third assignment of error, defendant argues that the trial court erred when it denied his motion for a mistrial. We review for abuse of discretion and we "will not reverse a conviction on that basis unless the defendant was denied a fair trial." *State v. Schumacher*, 315 Or App 298, 301, 500 P3d 698 (2021). As we explained above, defendant opened the door to the impeachment testimony and there was no statutory or constitutional prohibition on its use. As a result, the trial court did not abuse its discretion when it denied the motion for a mistrial.

Affirmed.

---

[3] We observe that below defendant characterized the right that he invoked as the "right to counsel." Because the right to counsel and the right to silence under Article I, section 12, are intertwined, we assume without deciding that defendant preserved the claim he raises on appeal.