Argued January 4, affirmed March 17, 1977

STATE OF OREGON, *Respondent,*
*v.*
REDGIE EUGENE SMALLWOOD, *Petitioner.*
(No. C 75-04-1053, CA 5119, SC 24735)
561 P2d 600

Howard R. Lonergan, Portland, argued the cause and filed briefs for petitioner.

[ 503 ]

W. Michael Gillette, Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before Holman, Presiding Justice, and Tongue, Howell, Bryson, Linde, Mengler, and Bradshaw, Justices.

HOLMAN, J.

**HOLMAN, J.**

Defendant was convicted of the crime of murder. The judgment of conviction was affirmed by the Court of Appeals. 25 Or App 251, 548 P2d 1346 (1976). This court granted review.

Defendant gave notice under ORS 163.135(1) and (2) that he would introduce expert testimony of extreme mental or emotional disturbance. Thereafter the state had him examined by its psychiatrist under ORS 163.135(4). Evidence was admitted through testimony of the state's psychiatrist that defendant had asserted his right to have his attorney present during the examination as well as his right not to answer questions posed by the psychiatrist concerning the particular acts with which he was charged.[1] Defendant contends that error was committed when the trial court failed to grant a mistrial because the jury was allowed to hear evidence that he chose to exercise his rights to remain silent and to have his lawyer present.[2]

There is no doubt that it is usually reversible error to admit evidence of the exercise by a defendant of the rights which the constitution gives him if it is done in a context whereupon inferences prejudical to the

---

[1]See *Shepard v. Bowe,* 250 Or 288, 442 P2d 238 (1968).

[2]The assignment of error is awkward and probably insufficient to raise all the issues, because the motion for a mistrial was made prior to the introduction of most of the evidence about which defendant now complains. However, we shall treat it, as did the Court of Appeals, as if defendant assigns as error the introduction of this evidence over his objection. The only testimony that was in the record at the time the motion for the mistrial was made and of which there is complaint is the following:

"Q  Have you in the course of your professional career had an occasion to perform a mental-status examination on the defendant in this case, Redgie Smallwood?

"A  I met with Mr. Smallwood on two occasions. One was on June 13th, 1975. I met with him for a very brief period of time. At that time he exercised his constitutional rights, and ——

"MR. LONERGAN: Excuse me, but that has no business in here. I move for a mistrial."

[ 505 ]

defendant are likely to be drawn by the jury.[3] If, however, there was no likelihood of prejudicial inferences in this case, the evidence would be relevant and admissible for the purpose of showing the depth and circumstances of the psychiatric examination. The prosecution did not argue to the jury that any particular inference should have been drawn, and the trial court specifically cautioned the jury not to draw any inference as to defendant's guilt or innocence.[4] Nonetheless, it is our duty to inquire whether it was likely that the jury would draw an inference prejudicial to defendant.

The usual inference which a defendant might believe would be drawn from his assertion of his right not to discuss with the state's psychiatrist defendant's actions in connection with the charged criminal occurrence is that defendant must have performed the actions charged—otherwise, he would have no objection to discussing them. No such inference, if drawn by the jury in this case, could have been damaging under the present record. The testimony of which defendant complains was not given until the state's rebuttal of his case. From the commencement of the trial it was made clear to the jury by defendant that he did not deny killing the victim by stabbing. Defendant's attorney stated at the conclusion of his opening statement to the jury:

> "The essential issue in this case is just what his state of mind was when this unfortunate incident took place and just what stage of legal responsibility he has in this.

---

[3] See *Miranda v. Arizona,* 384 US 436, 468, 86 S Ct 1602, 16 L Ed2d 694, 720 n 37 (1966); *Griffin v. California,* 380 US 609, 85 S Ct 1229, 14 L Ed2d 106 (1965).

[4] "The Court: I want to caution the jury that a defendant in this case and a defendant in every case has an absolute constitutional right not to make any statement that may tend to incriminate him, and if for any reason Mr. Smallwood declined to talk to Doctor Colbach, the fact that he declined to talk to Doctor Colbach is not to be taken by you, the jury, as any evidence tending to prove or disprove his guilt in this case. The only reason a psychiatrist's testimony is offered to you is to assist you in deciding the question of his mental state at the time of the act involved and not in deciding whether or not he committed any act."

We will offer all we have on this issue. As I say, there's no issue in my mind that he performed the act that resulted in this young woman's untimely death. The thing is, was he beside himself with rage and his mind clouded so that he was unable to conform his conduct to the law? Was he beside himself as he hit stroke after stroke in a manner that anyone knows is not a way of a person that is skilled with a knife would do but in a wild frenzy stroke after stroke? Was he under severe emotional stress because of this coming together and being discarded and the other men coming in and then being called back and being unable to refuse or leave the situation? That, ladies and gentlemen, is going to be the difficult and burdensome task that you have in this case."

In addition, defendant's psychiatrist testified in defendant's case in chief that defendant had admitted to her that he had stabbed the victim at least once. Having admitted, in effect, the act of killing, defendant cannot claim he was prejudiced by the drawing of any inference to that effect.

Another adverse inference that might be drawn is that defendant did not want to talk to the state's psychiatrist about the particular occurrence because he was afraid that if he did the psychiatrist would find that he was shamming in his claim of mental disturbance. This inference does not seem likely to have been drawn in view of defendant's submission to an otherwise complete psychiatric interview and later to examination on the witness stand. In addition, the state's psychiatrist testified concerning the reason he thought defendant had refused to discuss the particular occurrence:

"Q   Doctor, would the defendant discuss with you the details of the alleged crime?

"A   No, it was an understanding at the beginning of the interview that we would not talk about the crime at all. The defendant gave two reasons for this: One, he really did not trust me, and the second one is that he said he didn't want to talk about the victim out of some sense of honor to her."

In view of the circumstances, we believe there was no real likelihood that any adverse inferences were drawn by the jury from defendant's assertion of his right not to talk about the details of the killing. The circumstances were not such as to raise the question of whether defendant was shamming, and the guidance of both the court and the state's psychiatrist was away from drawing an adverse inference on that question.

The testimony concerning defendant's refusal to talk to the psychiatrist without the presence of his lawyer was, as follows:

"Q Doctor Colbach, now, you saw the defendant on two occasions?

"A Yes, sir.

"Q When is the first occasion?

"A June 13th, 1975.

"Q And for how long a period did you see the defendant on that day?

"A I was probably with him for ten or fifteen minutes.

"Q Did you advise him at that time that you were a psychiatrist requested by the State to examine him for the purpose of coming to a conclusion with regard to his mental responsibility for the alleged crime?

"A Yes.

"Q How did he respond to that?

"A He said that he would like to confer with his lawyer or have his lawyer present, and then I attempted to make some contact with his attorney, but we couldn't do it. We decided not to continue with the interview that day."

We believe the chance that any adverse inference would be drawn from this testimony by a contemporary jury is minimal. Defendant was told that the psychiatrist was hired by the state to examine him, and it seems entirely natural that he would be distrustful of the opposition under such circumstances and want to have some protection against unfair advantage being taken of him. The only adverse inference that could possibly be drawn would be that defendant would want the protection of his lawyer

only if he was actually sane and was fearful that it would be found out by the psychiatrist that defendant was dissembling. We believe that a contemporary jury is sufficiently aware of the value of legal counsel not to draw this tenuous inference. In addition, subsequent unobjectionable testimony disclosed that when the state's psychiatrist did examine the defendant at their second meeting, defendant's attorney was present recording the interview. Any adverse inference that would have been drawn from defendant's request that his lawyer be present at the first interview would also have been drawn from the circumstance that defendant's lawyer was present at the second interview. The jury would be equally aware that defendant wanted the protection of legal counsel during psychiatric examination.

It is our conclusion that it is unlikely that any inferences adverse to defendant were drawn from the testimony which disclosed that he asserted his constitutional rights.

The judgment of the trial court is affirmed.