Argued September 25, affirmed November 21, 1978

STATE OF OREGON, *Respondent,*
*v.*
PAULINE PICKETT, *Appellant.*
(DA 141863, CA 11108)

586 P2d 824

Marc D. Blackman, Portland, argued the cause and filed the brief for appellant.

Kathryn A. Logan, Certified Law Student, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

JOSEPH, J.

**JOSEPH, J.**

Defendant appeals her conviction after jury trial on a charge of theft in the second degree. ORS 164.045.

While in a large department store, defendant attracted the attention of two store security guards. They became suspicious because she was carrying a large and apparently empty shopping bag. As she wandered through the store under their observation, she at one time apparently abandoned the bag. One of the guards examined it and confirmed it was empty. A few minutes later, defendant returned to the area where she had left the bag, picked out a sweater from a display, put it in the bag and then walked out of the store. She was immediately stopped by the guards.

The guards identified themselves as store security people and asked defendant to go with them to the security office. On request defendant gave the bag to one of the guards. When asked why she had taken the sweater, she replied that it was to be a Christmas present for her mother. When asked how much money she had with her, she said $19. The price of the sweater was $86. Defendant had a checkbook in her purse.

One of the guards called the police. A police officer arrived in about 20 minutes and advised defendant of her *Miranda* rights. She expressly waived those rights. When asked if she had taken the sweater, she replied "Yes." The officer asked why she took it, and she said she wanted it as a gift for her mother. The officer testified that she also said she took it because she did not have enough money to pay for it. At trial defendant denied making the latter statement.

Defendant admitted that she left the store with the sweater. Her defense was that she did not have the intent to steal. Rather, she claimed, she was so distraught that day—primarily because she had just started on a new job and had recently been the victim of a hit and run accident in which her car was totally

[ 241 ]

ruined—that she did not realize she had taken the sweater from the store or even that she had placed it in the bag (which she admitted having just bought at another department store). Defendant called a psychiatrist who testified that at the time of the incident she was suffering from a mental defect known as "transient situational reaction" and did not have the intent to steal.

■ Defendant first argues that by permitting the prosecutor to elicit testimony that she did not offer to the guards or to the arresting officer any explanation of her conduct similar to that offered at trial and by permitting the prosecutor to argue that point to the jury, the trial court violated her rights under Article I, section 12 of the Oregon Constitution[1] and the Fifth Amendment of the United States Constitution as applied in *Doyle v. Ohio,* 426 US 610, 96 S Ct 2240, 49 L Ed 2d 91 (1976). She does not challenge the admissibility of the evidence on any other ground.

In *Doyle v. Ohio, supra,* the state argued that evidence of the defendants' silence after being given *Miranda* warnings could be used to impeach their exculpatory testimony at trial. The court said:

"Despite the importance of cross-examination, we have concluded that the Miranda decision compels rejection of the State's position. The warnings mandated by that case, as a prophylactic means of safeguarding Fifth Amendment rights * * * require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of those warnings may be nothing more than the arrestee's exercise of these Miranda rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. * * * Moreover, while it is true that

[1] Article I, section 12 of the Oregon Constitution provides in material part:

"No person shall * * * be compelled in any criminal prosecution to testify against himself."

the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." 426 US at 617, 618. (Citations and footnotes omitted.)

*See also State v. Smallwood,* 277 Or 503, 505, 561 P2d 600 (1977).

In this case, defendant did not choose to remain silent after she was given *Miranda* warnings by the arresting officer. Instead, she waived her *Miranda* rights and, according to the police officer whose testimony in this regard we must now accept, she explained that she took the sweater without paying because she did not have enough money. That explanation was inconsistent with the one offered at trial. There simply was no *silence* as to why she left the store without paying for the sweater, and neither *Miranda, Doyle* nor Article I, section 12 of the Oregon Constitution is applicable. The admission of evidence of what defendant did or did not say to the police officer and the argument that her conduct was inconsistent with her claims at trial was proper.

■ On the other hand, it is arguable that in her contact with the security guards defendant did remain silent on why she left the store without paying for the sweater. She did not tell them that she had taken it because she did not have enough money to buy it. The sense of her testimony was that she told them only that she had originally picked out the sweater as a gift for her mother, but said nothing about why she left the store without paying. Assuming for the sake of argument that what she did say to the guards was not inconsistent with the defense she offered at trial, her failure to explain her behavior to them as she attempted to explain it at trial was nevertheless admissible. The evidence complained of related to the period before the police officer arrived; the guards

were not then acting at the direction of the police. They did not give *Miranda*-type warnings, and defendant has not argued that they were required to. *Doyle v. Ohio, supra,* does not apply; nor does Article I, section 12 of the Oregon Constitution prohibit the introduction of evidence that defendant did not offer the explanation she gave at trial to the private security guards at a time when she would reasonably have been expected to do so. That evidence was relevant to negate the defense defendant offered at trial. She had an opportunity to explain why she did not tell the guards that her conduct had been inadvertent.[2] Whether she failed to tell the guards that because her actions were not inadvertent or whether she failed to do so for some other reason was a question for the jury.

■ Defendant next argues that her conviction should be reversed because of alleged prosecutorial misconduct. She contends that the prosecutor disregarded the trial court's ruling on defendant's objection to the prosecutor's argument that defendant's testimony should not be believed because she did not give the same explanation to the security guards or the police officer. The record indicates that when defense counsel objected to the line of argument, the court said "Sustained." However, counsel and the court thereafter treated the ruling as if it had overruled the objection. In fact, defense counsel asked for a continuing objection. In light of the trial court's earlier evidentiary rulings, we share the parties' apparent

---

[2] On the stand defendant explained her failure to tell them that she had inadvertently walked out with the sweater:

"I also said that I was very nervous and the way that they projected to me they didn't ask me if I had taken any, if I'd stole it, they didn't ask me my feelings, they didn't relate to me in that way at all.
"* * * * *

"They were intent on filling out their forms and going through the process; they were not interested in me and my feelings at all.
"* * * * *

"I wanted to get out of there and I didn't want to deal with them on that kind of a level. They had made those assumptions and I wasn't going to try and change their minds."

difficulty in comprehending that the court would have made the opposite ruling when it came up in argument. Not only does it seem most likely that the court simply misspoke, but the parties treated the ruling as an overruling of the objection. There was no misconduct.

■ Finally, defendant argues that the court erred in admitting the following testimony of one of the security guards:

(Prosecutor) "Q: About how many arrests have you made for shoplifting?
"* * * * *
"A: Well over a hundred.
"Q: Did this defendant act any differently than other people?
[Objection by defense counsel overruled.]
"A: She was relatively calm, which really suprised me.
"Q: Some people cry or are embarrassed?
"A: They are usually pretty nervous as to what their disposition will be.
"Q: But you say this defendant was rather calm?
"A: Yes."

Defendant asserts that that testimony constituted an inadmissible lay opinion on the ultimate issue before the jury. She argues that the direct inference to be drawn from the testimony was that because defendant was arrested by a person who had arrested others for shoplifting and because she acted like the others, she must be guilty of shoplifting. The simple answer to that argument is that the guard did not say that defendant had acted like the others. He said she appeared calm, and in particular that she appeared calm relative to other persons he had observed in the same situation. It is well and long established that a witness may testify that someone was calm or excited at a particular relevant time. *State v. Brown,* 28 Or

147, 41 P 1042 (1895). In light of the proffered defense of mental defect, that evidence was clearly admissible.

Affirmed.