Argued and submitted November 28, reversed and remanded December 27, 2006

# STATE OF OREGON,
*Respondent,*

*v.*

# PATRICIA ANN RAGLAND,
*Appellant.*

## CR04-12376; A128946

149 P3d 1254

Clint A. Lonergan argued the cause for appellant. With him on the brief were Richard Lonergan and Lonergan & Lonergan.

Anna M. Joyce, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Defendant appeals from her conviction for driving under the influence of intoxicants (DUII). ORS 813.010. She contends, in part, that the trial court erred in permitting the prosecutor to cross-examine her on matters related to her invocation of her right to counsel and her right to remain silent, and further erred in allowing the prosecutor to comment indirectly in closing argument about the same matters. For the reasons set forth below, we agree with defendant and, consequently, reverse and remand.[1]

For purposes of our review, the following material facts are undisputed. Early on the morning of June 26, 2004, a state trooper, Lea, observed defendant's vehicle, a Jeep, parked at the side of U.S. Highway 26, east of Sandy. Defendant was seated in the driver's seat, and Lea believed that she showed signs of intoxication. Lea asked defendant some questions and then informed her of her *Miranda* rights. Thereafter, Lea asked defendant if she had been drinking, and, according to Lea, defendant responded that she had been drinking beer earlier in the evening and had not been drinking in the Jeep.

Lea then asked defendant if she would perform field sobriety tests, and—as established through testimony adduced by way of an offer of proof at trial—defendant told Lea that she thought she needed an attorney. After defendant performed various nontestimonial field sobriety tests, Lea arrested her. Defendant was transported to the Sandy Police Station, where she gave a breath sample that showed a .14 blood alcohol content. It is undisputed that defendant invoked her right to counsel roughly five to ten minutes after Lea encountered her and that, including the administration of the breath test, Lea and defendant were together for approximately 90 minutes.

Defendant was charged with DUII. At trial, defendant testified that she had drunk several beers earlier in the

---

[1] Given our disposition, we do not reach defendant's second assignment of error, which pertains to the trial court's failure to give a requested jury instruction that defined "driving a motor vehicle" for purposes of ORS 813.010.

evening and that, as she was driving with her husband, she had pulled off Highway 26 because their Jeep broke down. She testified that her husband had decided that they should stay with the Jeep and wait until morning and that they had then sat down in an area off to the side of the highway and drunk beers from a 12-pack they had bought earlier. According to defendant, she and her husband later returned to the Jeep, leaving the box of beer where they had been drinking. They went to sleep, and Lea had arrived shortly thereafter.

On direct examination, defendant testified that she could not remember specifically any questions that Lea had asked her. On cross-examination, the prosecutor asked defendant if she remembered telling Lea that she drank beer before she drove the Jeep, and defendant responded that she did. The prosecutor then asked:

"Q. Do you remember telling—excuse me. But you never told [Lea] that you drank while you were on the side of Highway 26?"

Defense counsel objected to the question on Fifth Amendment grounds, and the court overruled the objection. Defendant answered that the officer had not specifically asked her whether she drank at the side of the road. The prosecutor continued:

"Q. Now, *after* [Lea] *told you you were under arrest* for drinking while you were driving, you never told her, 'Hey, but there's'—

"A. No.

"Q. —'a half-rack of beer'—

"A. No.

"Q. —'over in the woods there'?

"A. No.

"[Defense counsel]: Same objection."

(Emphasis added.) The trial court again overruled the objection. Defendant acknowledged that she had not so informed the officer. The prosecutor then asked defendant:

"Q. Later on in the evening when you were—excuse me. *After you'd been placed under arrest*, did you ever tell the

officer, 'I'm sorry. I think what I told you was wrong, because I was tired'?"

(Emphasis added.) Defense counsel again objected, and the trial court again overruled that objection. Defendant acknowledged that she had not made any such statements to the officer after her arrest.

During closing argument, the prosecutor stated:

"Wouldn't a reasonable person, if there was an alternative explanation for what was going on that night, *especially after you were told you were being arrested* for Driving Under the Influence of Intoxicants, say, 'Hey, there's also some beer about 30 feet over there. If you go look, that's what I've been drinking.' "

(Emphasis added.) Once again defense counsel objected, and, before counsel could state the basis of the objection, the court interjected, "It's final argument. Overruled." The prosecutor then continued with her argument, emphasizing to the jury that defendant "had an opportunity for an hour and a half to speak with the officer."[2]

■ On appeal, defendant assigns error to the court's rulings on the objections to the prosecutor's questions on cross-examination and statements in closing argument. Defendant contends that those questions and statements impermissibly commented, albeit in an indirect manner, on defendant's invocation of her Fifth Amendment rights. In particular, defendant asserts that those questions and statements suggested that the jury should draw an inference of guilt based on defendant's failure to speak to a police officer at a point at which defendant had, in fact, invoked her constitutional right not to do so.

The state responds that a prosecutor does not impermissibly comment on a defendant's invocation of Fifth Amendment rights simply by bringing to the attention of the jury any discrepancies between what a defendant told the

---

[2] The prosecutor also stated in closing argument:

"She never said anything else to the officer, and she had ample opportunity to speak with the officer. The officer testified that they were together for an hour and a half. That's a long time. That's a long time, and the whole time they were in each other's presence."

police and what a defendant later testified to at trial. As support for that proposition, the state cites *State v. Attebery*, 39 Or App 141, 591 P2d 409, *rev den*, 286 Or 449 (1979), and *State v. Pickett*, 37 Or App 239, 586 P2d 824 (1978).

We agree with defendant. Here, the prosecutor did not merely explore and argue about the changes in defendant's story, *viz.*, the "you didn't say then what you're saying now" discrepancies between defendant's contemporaneous responses to Lea and her testimony at trial. Rather, the prosecutor explicitly questioned defendant about why she had not told Lea certain information *after she had been arrested—i.e.*, after defendant had (as the prosecutor knew) invoked her Fifth Amendment rights—and then suggested to the jury that a "reasonable person" would have spoken to the officer under the circumstances. That conduct by the prosecutor impermissibly, prejudicially commented on defendant's invocation of her rights.

As the court explained in *State v. Larson*, 325 Or 15, 22-23, 933 P2d 958 (1997),

> "the Oregon Constitution grants a criminal defendant the right to remain silent. In *State v. Wederski*, 230 Or 57, 62, 368 P2d 393 (1962), this court held that the Oregon Constitution *does not permit a prosecutor to draw the jury's attention to a defendant's exercise of the right to remain silent.* The United States Supreme Court also has held that the federal constitution prohibits a prosecutor from pointing out that a defendant has exercised his or her right to remain silent. *See Griffin v. California*, 380 US 609, 615, 85 S Ct 1229, 14 L Ed 2d 106 (1965) (so holding). A defendant's right to remain silent is meaningless if the state may refer to the defendant's silence with impunity. *Wederski*, 230 Or at 62."

(Emphasis added.) An invocation of the right to counsel, in this context, implicates a defendant's right to remain silent. *State v. Alvord*, 118 Or App 111, 114-15, 846 P2d 432 (1993).

Here, of course, the prosecutor did not refer explicitly and directly to defendant's invocation of her rights. Rather, by posing questions about why defendant had not told the officer certain information "especially after you were

told you were being arrested," the prosecutor indirectly commented on defendant's post-invocation silence and invited the jury to draw prejudicial inferences from that silence. Specifically, through the cross-examination, the prosecutor put defendant in the position of either (1) explaining to the jury that she had not spoken to Lea after being arrested because, by that time, she had already invoked her rights under *Miranda* or (2) not referring to *Miranda* and having the jury draw the prejudicial inference that the prosecutor posited based on her silence even when faced with arrest. That "choice" was constitutionally insupportable, given the United States Supreme Court's holding in *Doyle v. Ohio*, 426 US 610, 96 S Ct 2240, 49 L Ed 2d 91 (1976).

*Doyle* involved facts substantially similar to those here. In *Doyle*, the two defendants were arrested after police officers tried to arrange a controlled drug buy that did not occur as planned by the officers. 426 US at 611-12. The defendants were arrested and given *Miranda* warnings, and they made no statements to the police at that time. At their trials, the defendants testified to an exculpatory version of events that contradicted the officers' testimony concerning the controlled buy. *Id.* at 613. On cross-examination of both defendants, the prosecutor questioned the defendants about why they did not tell the officers their version of events when they were arrested. *Id.* at 613-14. The Court stated:

> "The warnings mandated by [*Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966)], as a prophylactic means of safeguarding Fifth Amendment rights, * * * require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. * * * Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings."

*Id.* at 617-18 (citations and footnote omitted). The Court went on to quote with approval from *United States v. Hale*, 422 US

171, 183, 95 S Ct 2133, 45 L Ed 2d 99 (1975) (White, J., concurring):

> " '[After a person under arrest has received *Miranda* warnings] it seems to me that it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony.' "

*Doyle*, 426 US at 619. The Court thus held that "the use for impeachment purposes of [the defendants'] silence, at the time of arrest and after receiving *Miranda* warnings," violated the defendants' constitutional rights. *Id.*

So too here. The prosecutor's questioning and subsequent comments in closing argument on defendant's silence violated the principles prescribed in *Doyle* and *Larson*.

The cases on which the state relies are materially distinguishable. In *Attebery*, the defendant, who had been given *Miranda* warnings, made a statement to the police indicating that he had an alibi, but provided no specifics. At trial, the prosecutor suggested, over objection, that the jury could infer from the defendant's failure to provide details to the police that the alibi was concocted after that time. 39 Or App at 146. On appeal, we rejected the defendant's argument that the prosecutor's comment was improper, noting that the defendant had interjected the alibi issue into the case and implied that the police were aware of his alibi. *Id.* at 147. We concluded:

> "[The] defendant relies on *Doyle v. Ohio*, 426 US 610, 96 S Ct 2240, 49 L Ed 2d 91 (1976), where it was held that the prosecution may not use an accused's silence following *Miranda* warnings for impeachment purposes. *Doyle*, however, was a case of refusal to talk, *i.e.*, a case of the exercise of a constitutional privilege. This is a case of talking— claiming an alibi—and then trying to influence the jury by showing the claim was made while at the same time hiding from the jury facts surrounding the making of the claim which suggest it was false."

*Id.* Thus, *Attebery* involved a situation in which a prosecutor commented on what a defendant *said* after *receiving Miranda* warnings. Here, in contrast, the prosecutor questioned defendant about, and later commented to the jury upon, defendant's *silence* during the period following defendant's *invocation* of her *Miranda* rights.

*Pickett* involved essentially the same scenario as *Attebery*. There, the defendant was arrested for shoplifting, waived her *Miranda* rights, and then told the police a story that differed from her account at trial. *Pickett*, 37 Or App at 243. We concluded that the prosecutor's exploration of those discrepancies was permissible: "There simply was no *silence* as to why she left the store without paying for the sweater, and neither *Miranda*, *Doyle* nor Article I, section 12, of the Oregon Constitution is applicable." *Id.* (emphasis in original). Again, by contrast, in this case there *was* silence after defendant invoked her Fifth Amendment rights. The prosecutor questioned defendant about that silence, and later suggested to the jury that no "reasonable person" would have remained silent under those circumstances.

We thus conclude that the trial court erred in overruling defendant's objections to the prosecutor's cross-examination and closing argument. The question remains whether those errors require reversal.

A question or comment made in passing that touches on a defendant's exercise of Fifth Amendment rights does not necessarily require reversal of a conviction:

> "There is no doubt that it is usually reversible error to admit evidence of the exercise by a defendant of the rights which the constitution gives him if it is done in a context whereupon inferences prejudicial to the defendant are likely to be drawn by the jury. If, however, there was no likelihood of prejudicial inferences in this case, the evidence would be relevant and admissible * * *. The prosecution did not argue to the jury that any particular inference should have been drawn, and the trial court specifically cautioned the jury not to draw any inference as to defendant's guilt or innocence. Nonetheless, it is our duty to inquire whether it was likely that the jury would draw an inference prejudicial to defendant."

*State v. Smallwood*, 277 Or 503, 505-06, 561 P2d 600, *cert den*, 434 US 849 (1977) (footnotes omitted).

In this case, the prosecutor could easily have asked defendant why, *as she was responding to Lea's questions*—which antedated her invocation of her Fifth Amendment rights—she had not given the account that she gave at trial. That would not have involved a comment on defendant's post-invocation silence. Instead, the prosecutor specifically, and repeatedly, asked defendant why she had not spoken with Lea *after* she was arrested—that is, after she had invoked her Fifth Amendment rights—and then went on to argue to the jury at some length that a "reasonable person" after being arrested would have made statements to the arresting officer. In closing argument, the prosecutor thrice employed some variation of that argument, referring either explicitly to the post-arrest period or implicitly to that period by references to the totality of the time that defendant and Lea were together: "She had an opportunity for an hour and a half to speak to the officer." "[S]he had ample opportunity to speak with the officer. The officer testified that they were together for an hour and a half. That's a long time * * *." *See* 210 Or App at 186 n 2.

Thus, the prosecutor's comment on defendant's silence was not merely incidental. Rather, the reference to defendant's post-invocation silence—and the concomitant invitation to the jury to draw a prejudicial inference from that silence—were the striking points of the prosecutor's credibility attack on defendant's account at trial. Consequently, the trial court's failure to sustain defendant's objections to the prosecutor's cross-examination and remarks in closing constituted reversible error.

Reversed and remanded.