Argued and submitted November 25, 2013, reversed and remanded
October 15, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL LEE REINEKE,
*Defendant-Appellant.*

Washington County Circuit Court
C101164CR; A149095

337 P3d 941

Zachary Lovett Mazer, Deputy Public Defender, argued the cause for appellant. With him on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jennifer S. Lloyd, Senior Assistant Attorney General, argued the cause for respondent. On the briefs were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Janet A. Klapstein, Senior Assistant Attorney General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Defendant appeals a judgment convicting him of murder, ORS 163.115, raising 15 assignments of error. We write to address defendant's fourth assignment of error, in which he contends that the trial court erred in failing to sustain his objection to the prosecution's PowerPoint presentation in its closing argument, which he contends impermissibly commented on his invocation of his right to remain silent. For the reasons below, we agree with defendant and, accordingly, reverse and remand for a new trial.[1]

## I.  FACTS AND PROCEDURAL HISTORY

Defendant called 9-1-1 and told the dispatcher to send a coroner and a police officer to a house on Barcelona Way. When emergency responders and deputy sheriffs arrived, they found the victim, defendant's mother, lying in her kitchen with a pool of blood around her head and a phone cord around her neck. Defendant remained outside the house with Deputy DuPont, who requested during their conversation that defendant go to the sheriff's office and talk to Detective Rau, the main detective assigned to the investigation. Defendant agreed but told DuPont, while looking at the house, that he "wasn't talking about that." DuPont took defendant to the sheriff's office, where they talked for approximately 30 minutes until detectives Rau and Hays entered the interview room.

Rau informed defendant that they intended to apply for a warrant or to get consent to search the house and asked for defendant's consent. Defendant first replied that the house was not his. However, in response to questions, defendant said that he had been staying at the victim's house for the past several nights, and Rau said that he thought that defendant had the authority to consent to a search. Defendant reviewed and decided to sign a consent form for a search of the house.

Rau then gave defendant *Miranda* warnings and asked whether defendant wanted to talk. Defendant stated

---

[1] We reject without discussion defendant's eighth assignment of error to the denial of his motion to suppress. Given our disposition, we need not reach defendant's other assignments of error.

that he did not want to talk and invoked his right to counsel. Defendant was then arrested and taken to a holding cell. Rau and Hays later returned to the holding cell, and Rau told defendant that they were going to charge him with murder. Defendant was later charged by indictment with intentional murder.

At trial, defense counsel elicited testimony from Hays on cross-examination that he had not recorded the interactions with defendant at the sheriff's office but that technology had been available to do both audio and video recordings. During redirect, the prosecutor indicated that she had a matter for the court. With the jury out of the courtroom, the prosecutor argued that defendant's questioning of Hays had opened the door for the state to ask Hays why he had not recorded defendant at the sheriff's office, because the jury had been left with the impression, and the defense could argue, that Hays "willfully neglected" to record defendant or that the detectives "couldn't do their job." Defense counsel responded that he had not opened the door and that the focus of his questioning was on the accuracy of what Hays remembered about defendant's reaction when he was told that he was being booked for murder.

The trial court concluded that defense counsel had opened the door to an explanation by Hays regarding the lack of a recording but told counsel that it was going to limit the state's redirect on that subject to one question: "Why didn't you videotape or record your conversation with the defendant when you went in to tell him he was under arrest?" The court warned defense counsel that, if he argued to the jurors in closing argument that the detectives had the means but failed to use them to record defendant, it would allow the state to reopen its case and present evidence that defendant had invoked his right to remain silent. The court then directed Hays to state the response that he would be giving to that question. Apparently satisfied with that response, the court brought the jury back into the courtroom.

The prosecutor then asked Hays why he had not recorded his interactions with defendant, eliciting an answer that the reason he had not done so was because defendant had invoked his right to remain silent:

"Q Detective Hays, why didn't you use any of the videotape or other audio recording devices to record your interactions with the defendant at the Sheriff's Office?

"A [Defendant] declined to talk to us, so the interview never went any further.

"Q And when you went back in to inform him that he was under arrest, why didn't you record that?

"A When we went and had contact with him at the holding cell, it was to let him know that he was then going to be taken down to the jail and booked on the charge. It was simply a statement to let him know what was going on. We were not questioning him in any way. We were not trying to elicit an answer from him. We simply were letting him know what was happening next, and we were not expecting him to then ask us a question, or give any response whatsoever.

"We also do not use recording devices to record people without their knowledge. I wouldn't go up and start talking to a subject with a recorder going without them knowing it was going on. So, we never had any intent of getting information from him, so there was no reason for us to record."

Defendant did not object to the way the questioning occurred during redirect.

As part of her closing argument, the prosecutor used a PowerPoint presentation, which corresponded with her oral argument to the jury. The prosecutor began her argument by outlining the elements of the offense and pointing out which elements were in dispute. The prosecutor then argued that the operative question in this case was "did the State prove to you beyond a reasonable doubt that the defendant murdered [the victim?]" At that point, the prosecutor displayed a PowerPoint slide that had defendant's photograph in the center of the slide with the word "GUILTY" in large red capital letters underneath it. That slide also included four phrases. The first phrase ("Only he has motive") was located directly above defendant's photograph at the twelve o'clock position, with an arrow pointing down from that phrase to defendant's photograph. To each side of the photograph, the slide listed two other phrases ("His DNA on the murder weapon," and "His actions and

words at the scene of the crime"), each with arrows pointing from the phrase to defendant's photograph. Finally, below defendant's photograph and the word "GUILTY" was the phrase, "His refusal to speak at the police station." Like the other phrases on the slide, an arrow pointed from that phrase to defendant's picture. However, the positioning of the phrase, "His refusal to speak at the police station," was such that the arrow not only pointed to defendant's picture, but also pointed directly to the word "GUILTY" that was located under the picture.

As this "GUILTY" slide was on display, the prosecutor referenced it by stating:

> "I submit to you that the evidence proves beyond a reasonable doubt that the defendant and nobody else, the defendant is the one who killed [the victim]. There are a lot of reasons why I group them into four main categories, and I'll discuss each in more depth as we turn through the evidence in this case.

The prosecutor then orally listed each category of evidence that she argued proved that defendant was guilty of murder, which corresponded with the phrases on the "GUILTY" slide:

> "Number one, he and only he has the motivation to have killed this woman. He and only he, and the evidence shows that.

> "Number two, his actions and words at the scene of the crime. The evidence surrounding his actions and words at the scene of the crime prove that he killed [the victim].

> "Number three, his refusal to speak at the police station with the detectives investigating this case."

At that point, defense counsel objected, and the trial court sustained that objection. The prosecutor asked to approach, to which the court replied, "You may continue." The prosecutor continued by listing the fourth category of evidence, defendant's DNA on the murder weapon.

The prosecutor then proceeded to walk through each category of evidence individually. Beginning with the first category ("Only he has motive"), the prosecutor displayed a version of the "GUILTY" slide that only contained

that phrase and the arrow pointing to defendant's photograph with the word "GUILTY" below it. She then displayed slides with bullet points summarizing the evidence of defendant's motive. After she was finished with that category of evidence, she followed the same process with the other categories, except that the other three phrases on the initial "GUILTY" slide were added back onto the slide as she reached each category.

In conjunction with the state's argument concerning the second category of evidence (defendant's actions and words at the scene), the prosecutor mentioned that defendant never asked the deputy "a single question about his mother," which was also a factual highlight listed on a frame of the PowerPoint presentation. Defendant objected and moved to strike the comment, and the court sustained the objection and struck the state's comment.

When discussing the third category of evidence, which the prosecutor displayed on the PowerPoint presentation as "His refusal to speak at the police station," the prosecutor showed the jury a slide containing the following bulleted factual points, which the prosecutor argued in turn:

"Brought in to Sheriff's Office for questioning

"Happily talking about skateboarding

"Detectives come in → he is all about business

"Won't even discuss how long has been in this house

"Refuses to speak about what happened[.]"

Among other things, the prosecutor recounted that defendant's affect changed when Hays and Rau went into the interview room and told the jury that he would not "even discuss how long he's been in the residence" and was not "forthcoming" with the detectives. Defendant objected, but the prosecutor went on to say that the "free flow of information" stopped when Hays and Rau were asking defendant questions. Defendant objected again. The trial court overruled both objections. Shortly thereafter, defendant also objected to the PowerPoint presentation, and the trial court overruled that objection as well.

All told, in three separate frames of the PowerPoint presentation, the jury saw "His refusal to speak at the police station" with an arrow pointing to "GUILTY." It is not apparent from the record how long each of the "GUILTY" frames remained visible to the jury, but it appears that the frame with the bulleted factual points concerning defendant's refusal to speak at the police station, including the last bullet point, "Refuses to speak about what happened," was before the jury while the prosecutor argued all of the factual points listed on the frame.

At the conclusion of the state's closing argument, the trial court invited closing argument from defendant. Defendant proceeded to argue, among other things, that the investigation was faulty. Defendant contended that detectives should have talked to the victim's former husband, defendant's father, because he was likely to know about the victim's social contacts and other information that could have been helpful, and to associates at the senior center that the victim frequented. Defendant also faulted the detectives for looking at only "one week's worth of telephone records," incompletely analyzing the victim's computer, failing to review the victim's financial records, and otherwise undertaking an investigation that was too brief. Defendant also argued that the victim was depressed and it was "a reasonable possibility" that she had committed suicide while defendant was outside working on a bicycle. After defendant's closing, the court immediately invited rebuttal from the prosecutor.

Upon conclusion of closing arguments and after the jury was instructed and had retired to deliberate, defendant moved for a mistrial. He contended that the state's PowerPoint presentation and repetitive arguments about his refusal to speak to the detectives amounted to unconstitutional comment on his invocation of the right to remain silent.

The trial court denied the motion, noting that defendant had opened the door to the admission of the fact that he had not talked to the detectives. Defendant maintained his objection to the admission of that evidence, but argued that, even if it was admissible, there was a difference between

"getting that into evidence, and then arguing later that that means the defendant is guilty, which is clearly unconstitutional." The trial court disagreed with defense counsel that the prosecutor was arguing that defendant's silence indicated his guilt and reiterated that it was denying the motion. The jury found defendant guilty of murder, and this timely appeal followed.

## II. ANALYSIS

On appeal, defendant assigns error to the trial court's ruling on his objection to the state's PowerPoint presentation, which he contends impermissibly commented on his right to remain silent. Whether a prosecutor improperly comments on a defendant's right to remain silent is a question of law that we review for legal error. *State v. Ragland*, 210 Or App 182, 187, 149 P3d 1254 (2006).

Defendant argues that, even if his cross-examination of Hays opened the door to the admission of the fact that he had invoked his right to remain silent, the state was not allowed to argue that his silence was evidence of his guilt. Accordingly, he contends that the trial court erred when it overruled his objection to the state's PowerPoint presentation and that, because that error was prejudicial to his right to a fair trial, we must reverse and remand for a new trial.

In response, the state concedes that "components of the PowerPoint presentation placed unnecessary emphasis on defendant's invocation" but argues that defendant's claim on appeal fails because he "did not object to particular slides when shown," and therefore "it is impossible to determine whether the slides were visible to jurors for more time than the flip of a switch." At oral argument before us, the state also argued that, despite the fact that some of the PowerPoint slides focused on defendant's refusal to speak to the police, the focus of the prosecutor's *oral* argument to the jury was on the change in defendant's behavior, not on the fact that he had invoked his right to remain silent. We agree with defendant that the trial court committed reversible error when it overruled his objection to the state's PowerPoint presentation.

A criminal defendant has a right to remain silent under Article I, section 12, of the Oregon Constitution, *State v. Wederski*, 230 Or 57, 62, 368 P2d 393 (1962), and the Fifth and Fourteenth Amendments to the United States Constitution, *Griffin v. California*, 380 US 609, 615, 85 S Ct 1229, 14 L Ed 2d 106 (1965).[2] The Oregon Supreme Court has held that "the Oregon Constitution does not permit a prosecutor to draw the jury's attention to a defendant's exercise of the right to remain silent." *State v. Larson*, 325 Or 15, 22, 933 P2d 958 (1997). Similarly, the United States Supreme Court has held that the federal constitution prohibits the prosecution from commenting on a defendant's invocation of his or her right to remain silent. *Griffin*, 380 US at 615.

In this case, the state concedes that portions of the PowerPoint presentation "placed unnecessary emphasis on defendant's invocation." We agree. The prosecution's PowerPoint presentation contained multiple slides that referenced defendant's invocation of his right to remain silent, including the three slides with the phrase, "His refusal to speak at the police station," and the one slide that states, "Refuses to speak about what happened." The state does not argue that those references were permissible because defendant had earlier opened the door to evidence of his silence during his cross-examination of Hays. However, because it appears that the trial court may have ruled on defendant's objection to the PowerPoint presentation on that basis, we consider whether doing so was legally correct.

We have recognized that, while it is ordinarily improper for a prosecutor to comment on a defendant's silence, a "prosecutor has the right * * * to reply to argument made by opposing counsel, and, in doing so, statements may be made which otherwise would be improper." *State v. Guritz*, 134 Or App 262, 270, 894 P2d 1235, *rev den*, 321 Or 560 (1995); *see also State v. Miranda*, 309 Or 121, 128, 786 P2d 155, *cert den*, 498 US 879 (1990) ("A defendant's own inquiry on direct examination into the contents of otherwise inadmissible statements opens the door to further inquiry

---

[2] Article I, section 12, provides, in part: "No person shall * * * be compelled in any criminal prosecution to testify against himself." The Fifth Amendment provides, in part: "No person * * * shall be compelled in any criminal case to be a witness against himself[.]"

on cross-examination relating to those same statements."). However, a prosecutor's right to reply is limited and confines the prosecutor's response to evidence or argument that rebuts the impression created by the defendant. *See, e.g., Guritz*, 134 Or App at 270 (concluding that the prosecutor was permitted to respond to defense counsel's comments about the inadequacy of the detective's investigation by telling the jury that the defendant had cut short the interview by invoking his right to remain silent).

Thus, even if a defendant opens the door to evidence of the defendant's silence, a prosecutor cannot argue that the defendant is guilty because he or she invoked the right to remain silent. *See United States v. Gant*, 17 F3d 935, 941 (7th Cir 1994) ("[T]he government may use [a] defendant's silence for the limited purpose of impeaching his testimony; it may not argue that the defendant's silence is inconsistent with his claim of innocence."); *United States v. Martinez-Larraga*, 517 F3d 258, 268 (5th Cir 2008) (acknowledging that that circuit, as well as other courts, have continued to recognize the "open the door" exception to the rule against the prosecution commenting on a defendant's post-*Miranda* silence, "while likewise recognizing that it does not permit the prosecution to argue that the jury should infer *** [the defendant's] guilt directly from his post-arrest silence" (internal quotation marks omitted; brackets in *Martinez-Larraga*)); *State v. Hargrove*, 48 Kan App 2d 522, 540, 293 P3d 787, 800 (2013) ("The exception allows a surgical rebuttal confined to countering a cultivated and deceptive depiction of the evidence rather than a wide open use of the defendant's silence to prove guilt—the vice *Doyle* [*v. Ohio*, 426 US 610, 96 S Ct 2240, 49 L Ed 2d 91 (1976)] intended to eliminate.").

In this case, assuming, without deciding, that defendant's cross-examination of Hays opened the door to evidence of his silence, the prosecutor was allowed only to use that evidence to rebut any misimpressions created by defendant.[3] The prosecutor could not argue that defendant's

---

[3] On appeal, defendant challenges the trial court's conclusion that his cross-examination of Hays opened the door to admission of evidence of his invocation of his right to remain silent. However, because our resolution of his assignment of error relating to the state's PowerPoint presentation is dispositive, we need not decide whether the court erred in reaching that conclusion.

refusal to speak to the police was evidence of his guilt—which is exactly what she did in her PowerPoint presentation. Therefore, we conclude that the prosecutor's references to defendant's silence in the PowerPoint presentation were improper and were not justified under the "open the door" exception to the rule against comments on a defendant's silence. Accordingly, the trial court erred when it overruled defendant's objection to the state's PowerPoint presentation. We next consider whether, as defendant contends, that was reversible error requiring a new trial.

The Oregon Supreme Court has explained that "[t]here is no doubt that it is usually reversible error to admit evidence of the exercise by a defendant of the rights which the constitution gives him if it is done in a context whereupon inferences prejudicial to the defendant are likely to be drawn by the jury." *State v. Smallwood*, 277 Or 503, 505-06, 561 P2d 600, *cert den*, 434 US 849 (1977). Thus, "[a] reference by a prosecutor or a witness to the fact that a defendant exercised a constitutional right, such as the right to remain silent, 'may prejudice the defendant's ability to have a fair trial if the jury is likely to infer that the defendant exercised the right because he or she was guilty of the charged offense.'" *State v. Osorno*, 264 Or App 742, 748, 333 P3d 1163 (2014) (quoting *State v. Veatch*, 223 Or App 444, 455-56, 196 P3d 45 (2008)); *cf. Ragland*, 210 Or App at 190 (explaining that "[a] question or comment made in passing that touches on a defendant's exercise of Fifth Amendment rights does not necessarily require reversal" in the absence of a prejudicial inference).

We have no trouble concluding that the jury in this case was likely to draw a prejudicial inference from the prosecutor's references to defendant's invocation in her PowerPoint presentation. The prosecutor's PowerPoint presentation expressly urged the jury to decide that defendant's refusal to speak to the police was one of the four reasons that he was guilty of murdering the victim. The state argues that we should not conclude that defendant was prejudiced because we cannot determine how long the "GUILTY" PowerPoint slides were in front of the jury. The record, however, demonstrates that the prosecutor used the PowerPoint presentation in conjunction with her oral argument, which

tracked what was on the slides, and that at least three slides implied that defendant was guilty because he "refus[ed] to speak at the police station." Those repeated references to defendant's silence and guilt during closing argument were not subtle, isolated, or fleeting. For the same reason, we reject the state's argument that the prosecutor's oral statements to the jury somehow detracted from the direct implication in the PowerPoint slides that defendant's refusal to speak indicated that he was guilty. We conclude that it is highly likely that the jury drew an adverse inference that defendant's refusal to speak to the detectives was evidence of his guilt. *Cf. State v. McClatchey*, 259 Or App 531, 541, 314 P3d 721 (2013) (concluding that the jury was unlikely to draw adverse inferences regarding the defendant's guilt from the officer's testimony about the defendant's statement that he "'didn't want to say anything,'" because, among other things, the reference to the defendant's statement was "isolated" and neither the prosecutor nor any witness referred to it again). Accordingly, the trial court erred when it failed to sustain defendant's objection to the PowerPoint presentation. Because defendant's right to a fair trial was prejudiced, we reverse and remand for a new trial.[4]

Reversed and remanded.

---

[4] Given our disposition of defendant's assignment of error regarding the prosecution's PowerPoint presentation, we need not reach his arguments regarding the prosecutor's remarks about the change in defendant's demeanor. Nor do we need to consider whether the trial court erred in denying defendant's motion for a mistrial. *See Ragland*, 210 Or App at 191 (trial court's failure to sustain the defendant's objection to the prosecutor's remarks in closing argument that commented on the defendant's right to remain silent was reversible error).