Argued and submitted November 25, 2015; reversed and remanded as to
Count 1, otherwise affirmed November 23, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SHAMRA DAWN HOUSE,
*Defendant-Appellant.*

Multnomah County Circuit Court
131154393; A156803

385 P3d 1099

Rond Chananudech, Deputy Public Defender, argued
the cause for appellant. With him on the brief was Peter
Gartlan, Chief Defender, Office of Public Defense Services.

Robert M. Wilsey, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Shannon T. Reel, Assistant Attorney General.

Before Ortega, Presiding Judge, and Hadlock, Chief Judge, and Lagesen, Judge.*

.

---

* Hadlock, C. J., *vice* Nakamoto, J. pro tempore.

## LAGESEN, J.

While intoxicated, defendant made a wrong turn onto the MAX light-rail tracks in east Portland and drove on the tracks for 50 yards or so before becoming stuck on the center of the eastbound track. For that conduct, she was convicted of two misdemeanors: driving under the influence of intoxicants (DUII), ORS 813.010 (Count 1); and reckless driving, ORS 811.140 (Count 2). At trial, defendant testified that she had not been intoxicated on the night in question but, instead, testified that she had consumed three O'Doul's, a nonalcoholic beer, that night. On appeal, she assigns error to the trial court's decision to permit the prosecutor to ask her why she had not told the investigating officer, Kritter, about her consumption of the O'Doul's, contending that the question represented an improper comment on defendant's invocation of her right against self-incrimination, thereby violating her rights under Article I, section 12, of the Oregon Constitution,[1] and the Fifth Amendment to the United States Constitution.[2] Defendant also assigns error to the trial court's decision to permit the prosecutor to argue, over defendant's objection, that defendant's story about consuming nonalcoholic beer was false because defendant did not tell Kritter the same story on the night of the incident. Defendant contends that that argument impermissibly permitted the state to impeach her with her constitutionally protected right to remain silent. On review for legal error, *State v. Reineke*, 266 Or App 299, 307, 337 P3d 941 (2014), we agree with defendant. Accordingly, we reverse and remand.

The facts pertinent to the issues on appeal are not disputed. Responding to an 11:52 p.m. report of a vehicle stuck on the MAX tracks, Kritter found defendant in the driver's seat of her car, revving her engine and spinning her wheels in an attempt to get unstuck. Concerned about the risk of getting hit by a train, Kritter asked defendant to turn off the car and get out of it. When defendant did so, Kritter observed signs that indicated defendant was under

---

[1] Article I, section 12, provides, in part, that "[n]o person shall * * * be compelled in any criminal prosecution to testify against himself."

[2] The Fifth Amendment provides, in part, that "[n]o person * * * shall be compelled in any criminal case to be a witness against himself[.]"

the influence of alcohol, including an odor of alcohol. As they walked to his patrol car, Kritter questioned defendant about how she had ended up on the MAX tracks. During the course of that conversation, defendant admitted that she did not feel safe to drive, but declined to answer any questions about what and how much she had had to drink that night:

"[Kritter:]   How much have you had to drink tonight[?]

"[Defendant:]   Tonight?

"[Kritter:]   Yeah.

"[Defendant:]   (No audible response).

"[Kritter:]   You're just shaking your head. What—

"[Defendant:]   I am not going to answer anything.

"[Kritter:]   Okay. Do you feel safe to operate a motor vehicle?

"[Defendant:]   No.

"[Kritter:]   No? How come you got into your car and were driving then?

"[Defendant:]   That's why I'm trying to get myself out of this situation."

Persuaded that defendant had been driving under the influence of intoxicants, Kritter arrested her, advised her of her *Miranda* rights, and transported defendant to the police station. After Kritter provided defendant with *Miranda* warnings, she continued to respond to Kritter's questions. When Kritter asked defendant whether she would provide a breath sample, defendant responded that she would neither provide a breath sample nor perform a "roadside sobriety" test. Kritter then asked defendant whether she "could have navigated the MAX tracks a little bit better" if she had not had so much to drink. Defendant responded, "I don't know." At one point, defendant mentioned that she is "a Jack and Coke person." Kritter later asked defendant, "[I]f you were to provide a breath sample today, it would be over the 0.08 level?" Defendant responded, "No comment." Finally, when Kritter asked defendant why she had been driving drunk, defendant responded that she "[w]anted to go home." Kritter recorded almost the entirety of his interaction with defendant.

As a result of the incident, defendant was charged with DUII and reckless driving. Before trial, defendant moved to suppress the statements that defendant made after she told Kritter that she was "not going to answer anything." Defendant contended that she had invoked her constitutional right against self-incrimination and that, as a result, any subsequent statements elicited by Kritter had to be suppressed. The trial court granted the motion in part. Although the court determined that defendant was neither in custody nor compelling circumstances, the court concluded that defendant had equivocally invoked her right against self-incrimination. The court further reasoned that, because Kritter did not clarify that equivocal invocation, defendant's answers to Kritter's questions, from the point at which defendant said she was "not going to answer anything" until the point in time that defendant received the *Miranda* warnings, had to be suppressed.[3] The court ruled that defendant's post-*Miranda* statements were admissible.

The state presented its case-in-chief in a manner consistent with the trial court's ruling. Kritter testified, among other things, that defendant had smelled like alcohol on the night of the incident. Defendant then testified in her own defense. In response to Kritter's testimony about the smell of alcohol, she explained that she smelled like alcohol on the night of the incident because she had consumed three nonalcoholic beers at the bar where she had been. Defendant also testified that she felt safe to drive that night.

---

[3] The correctness of that ruling is not at issue on appeal, and we express no opinion on it, except to note that under current Oregon law, it is debatable whether the right to remain silent under Article I, section 12, is implicated "absent custody or compelling circumstances." *See State v. Schiller-Munneman*, 270 Or App 22, 32, 346 P3d 636 (2015), *rev'd on other grounds*, 359 Or 808, 377 P3d 554 (2016) (citing *State v. Davis*, 350 Or 440, 459, 256 P3d 1075 (2011)). The Supreme Court observed on review of our decision in *Schiller-Munneman* that it has

"not addressed whether, absent custody or compelling circumstances, a defendant's invocation of the right to silence in response to police questioning may be admitted as substantive evidence at trial. This court also has not addressed whether a defendant who remains silent must expressly invoke the right to silence, or whether, and under what circumstances, an invocation may be implied. Nor has this court decided whether invocation, express or implied, is necessary to trigger the protections of Article I, section 12."

*Id.* at 813.

On cross-examination, as a result of defendant's testimony about feeling safe to drive, the trial court permitted the state to impeach defendant with her previously suppressed statement that she did not feel safe to drive. In addition, the prosecutor asked defendant why she had not told Kritter about the nonalcoholic beers on the night of the incident. Defendant objected on the ground that the question inappropriately commented on defendant's right to remain silent, given the court's ruling that defendant had invoked that right, but the trial court overruled that objection and permitted the state to pursue that line of questioning. Then, in her closing argument, the prosecutor argued, repeatedly, that the jury should infer that defendant's testimony about consuming O'Doul's was false because she had not mentioned the O'Doul's on the night of the incident. Specifically, regarding the O'Doul's, the state said, "[W]hy on earth wouldn't she have just said that from the very beginning?" The prosecutor further argued that defendant could have told Kritter about the O'Doul's either at the MAX tracks or at the station house, "[a]nd so she's given not one, but two different opportunities to explain, 'Officer, I just had three O'Doul's, let's clear this up.'" Although defendant objected to that part of the prosecutor's closing argument as an impermissible comment on defendant's invocation of her right to remain silent, the trial court overruled that objection and the state reiterated its argument: "The point is, [defendant] never told [Kritter] that she had three O'Doul's that night. And [defendant] had several opportunities to tell [Kritter], 'I only had three O'Doul's, let's clear this up." The prosecutor made the same point again on rebuttal, arguing again that defendant never told Kritter about the O'Doul's that night, although she could have done so "at any point" during their interaction.

The jury convicted defendant of DUII. Defendant waived her right to a trial by jury on the reckless driving charge, and the court convicted her on it. On appeal, as noted, defendant assigns error both to the trial court's overruling of defendant's objection to the state's inquiry into why defendant did not tell Kritter that she had the three O'Doul's, and also to the trial court's overruling of defendant's objection to the prosecutor's argument that the jury should discredit

defendant's O'Doul's story because defendant had omitted to tell that story to Kritter. Defendant contends that the prosecutor's question and argument represented an impermissible comment on defendant's invocation of her state and federal constitutional right against self-incrimination. *See State v. Ragland*, 210 Or App 182, 186-88, 149 P3d 1254 (2006) (discussing principle).

In response, the state first argues that, to the extent defendant challenges her reckless driving conviction, defendant failed to preserve any claim of error with respect to that conviction which, as noted, was tried separately to the trial court. The state also points out that defendant has not raised any specific arguments on appeal as to how the alleged errors affected her bench trial on the reckless driving charge and, for that reason, has not identified any grounds for reversal of that conviction. We agree with those arguments and affirm the judgment as to defendant's reckless driving conviction.

As to the DUII conviction, as we understand the state's argument, the state does not dispute (1) that defendant had the constitutionally protected right to remain silent at all pertinent times referenced by the prosecutor's question and argument,[4] (2) that defendant had invoked that right to remain silent at all pertinent times, or (3) that the prosecutor's comments referred to that invoked right to remain silent and invited the jury to impeach defendant with the fact that she had remained silent, rather than telling Kritter about the O'Doul's. Instead, the state argues that the prosecutor's question and closing arguments were a permissible way to impeach defendant's testimony that she had drank three O'Doul's on the night in question. The state further argues that defendant "opened the door" to that impeachment strategy by testifying both that she felt safe to drive on the night in question and that she had drank three O'Doul's that night:

---

[4] In particular, as noted earlier, the state has not argued below or on appeal that, under the reasoning of our decision in *Schiller-Munneman*, defendant did not have a constitutionally protected right to remain silent outside of custody or compelling circumstances, such that the prosecutor's references to defendant's invocation of her right to remain silent would be constitutionally permissible. As a result, this opinion does not resolve that issue.

"That is, defendant testified that she felt safe to drive that night because she had had only non-alcoholic beer to drink. The state was therefore entitled to impeach her testimony with her prior inconsistent statements that she did *not* feel safe to drive and did *not* tell Officer Kritter that she had only non-alcoholic beer."

Although the state is correct that it was entitled to impeach defendant's testimony about the O'Doul's with her prior inconsistent *statements* on the night in question, that is not what the prosecutor did in the question and arguments challenged by defendant. The prosecutor did not limit her questions and argument to pointing out that defendant made affirmative statements on the night of the incident that were inconsistent with defendant's trial testimony that she had consumed only nonalcoholic beers. Rather, the prosecutor also repeatedly impeached defendant with her *silence* about consuming the O'Doul's—silence that the state has not disputed on appeal was the product of defendant's invocation of her constitutionally protected right to remain silent. As we explained in *Ragland*, except in limited circumstances,[5] that strategy of impeachment, which calls attention to a defendant's failure to make certain statements during a time in which she has invoked her right to remain silent, is not constitutionally permissible. That is because it puts a defendant in the position of either explaining to the jury that she invoked her right to remain silent or, alternatively, not explaining to the jury that she invoked her right to remain silent "and having the jury draw the prejudicial inference that the prosecutor posited based on her silence even when faced with arrest." *Ragland*, 210 Or App at 188; *cf. Doyle v. Ohio*, 426 US 610, 618, 96 S Ct 2240, 49 L Ed 2d 91 (1976) (stating that implicit in the *Miranda* warnings is the assurance that silence will carry no penalty); *United States v. Hale*, 422 US 171, 183, 95 S Ct 2133, 45 L Ed 2d 99 (1975) (White, J., concurring in the judgment)

---

[5] For example, a defendant may be impeached with the fact that she invoked her right to remain silent if she testifies at trial and her trial testimony implies that she would have made an exculpatory statement at the time of arrest, had officers given her the opportunity. *State v. Clark*, 233 Or App 553, 561, 226 P3d 120 (2010); *see also State v. Guritz*, 134 Or App 262, 270, 894 P2d 1235, *rev den*, 321 Or 560 (1995) (concluding that defense counsel opened the door for the state to comment on defendant's silence when he argued that defendant didn't explain his actions to officer because officer never afforded defendant the opportunity).

(explaining that when a defendant is advised of the right to remain silent, due process does not permit a prosecutor to comment on that silence or to insist that the defendant's statements at trial are untrue because those statements were not made previously). Accordingly, we conclude that the trial court erred in overruling defendant's objections to the prosecutor's question and argument.

The question is whether that error is a reversible one. To determine whether it is reversible error to admit evidence of a defendant's exercise of his or her rights, we look to the likelihood that the jury would draw a prejudicial inference. *See Ragland*, 210 Or App at 190-91 (citing *State v. Smallwood*, 277 Or 503, 505-06, 561 P2d 600, *cert den*, 434 US 849 (1977)); ("There is no doubt that it is usually reversible error to admit evidence of the exercise by a defendant of the rights which the constitution gives him if it is done in a context whereupon inferences prejudicial to the defendant are likely to be drawn by the jury."). Here, we are persuaded that the error is reversible. The prosecutor's question and argument, which repeatedly emphasized defendant's failure to mention the O'Doul's to Kritter, permitted the jury to draw a negative inference regarding defendant's credibility from the fact that she had chosen to remain silent, under circumstances in which—and, again, the state has not disputed the point in the context of this appeal—defendant's silence was the product of defendant's invocation of her constitutionally protected right to remain silent. And, as defendant notes, the trial court did not take steps to ensure that the jury would not draw that prejudicial inference about defendant's credibility. Although it is true that the prosecutor impeached defendant with other permissible strategies, the prosecutor's repeated emphasis on defendant's failure to mention the O'Doul's makes it likely that the jury drew the inference that prosecutor so strongly urged.

In arguing for a different result, the state argues that defendant's failure to request a curative instruction or move for a mistrial precludes reversal. But it is apparent from the fact that the trial court permitted the prosecutor to pursue the challenged line of questioning and arguments *after* defendant's objections that the trial court overruled those objections. Under those circumstances, we conclude

that defendant was not also obligated to request a curative instruction or a mistrial once the court had overruled her objections in order to preserve her contention that the trial court committed reversible error.

The state also points to the fact that the prosecutor mentioned in her rebuttal argument that the jury should not infer defendant's guilt from the invocation of her right to remain silent, and argues that that argument prevented any prejudice to defendant. But the harm to defendant in this case does not derive from the fact that the jury heard about defendant's invocation of her right to remain silent (although that harm can be a cognizable one too). The harm is that the jury was permitted to draw a prejudicial inference about defendant's credibility from the mere fact that she remained silent about the O'Doul's on the night of the incident at a time at which she had the right to remain silent and had invoked that right to remain silent.

Reversed and remanded as to Count 1; otherwise affirmed.