756 July 9, 2025 No. 616

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TIMOTHY BRUCE ANDERSON,
*Defendant-Appellant.*

Washington County Circuit Court
22CR20126; A180619

Brandon M. Thompson, Judge.

Submitted November 19, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Emma McDermott, Deputy Public Defender, Oregon Public Defense Commission, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and DeVore, Senior Judge.

KAMINS, J.

Reversed and remanded.

**KAMINS, J.**

Defendant appeals from a judgment of conviction for one count of driving under the influence of intoxicants (DUII) and one count of reckless driving. Defendant assigns six errors. Defendant's first three assignments of error pertain to the trial court's admission of defendant's refusals to perform a field sobriety test (FST) and a breath test as evidence of guilt. In his fourth assignment of error, defendant contends that the trial court erred by admitting a 9-1-1 recording over his hearsay objection. In his fifth assignment of error, defendant argues that the trial court erred by allowing the prosecutor to make improper arguments. Defendant's sixth assignment of error challenges the imposition of community service. As explained below, we agree with defendant that the prosecutor's arguments were improper. Consequently, we reverse and remand. We also address defendant's first four assignments of error as they are likely to arise on remand.

Officers Garza and Tuwit responded to a 9-1-1 call from an off-duty officer reporting that defendant had been driving erratically. Garza asked defendant, "You mind just doing some field sobriety tests with us?" Defendant declined, stating that he was "not comfortable with that." Garza provided *Miranda* warnings to defendant and briefly stepped away to speak to the off-duty officer who reported defendant's driving. When Garza returned, he told defendant, "I'm just going to read you something *** [be]cause you said you didn't want to do any field sobriety tests." Garza asked defendant, "I'm going to ask you to submit to purely physical field sobriety tests," and described those tests. Defendant refused and Garza read defendant the *Rohrs* admonishment,[1] informing him that his "refusal or failure to submit to these purely physical tests may be used against [him] in any criminal or civil proceeding," and asked whether defendant understood. Defendant responded, "I understand." Garza then asked whether defendant "wish[ed] to not do the tests?" Defendant again declined. Defendant was subsequently arrested and taken to the police station.

---

[1] The *Rohrs* admonishment is a warning that a refusal to submit to physical tests may be used against a defendant in court. *State v. Rohrs*, 157 Or App 494, 499, 970 P2d 262 (1998), *aff'd*, 333 Or 397, 40 P3d 505 (2002).

While at the police station, Garza read defendant Section 1A of the Implied Consent form, which explains the penalties for DUII and the consequences of failing a breath test. At the conclusion of reading Section 1A to defendant, Garza asked defendant if he would take a breath test. Defendant declined. Garza then read Section 1B of the Implied Consent form, which provides that defendant is "about to be asked to provide only physical cooperation to submit to a breath test or blood test" and that the refusal of the breath test may be used against defendant, along with other repercussions. At the conclusion of reading Section 1B, Garza asked defendant, "Will you provide physical coopera-tion and submit to a breath test?" Defendant replied, "No, I'm not submitting to a breath test." Eventually, Garza obtained a warrant for defendant's breath and blood. Following a jury trial, defendant was found guilty of DUII and reckless driving.

We begin by addressing defendant's fifth assign-ment of error because it is dispositive. Defendant contends that the following argument from the prosecutor's rebuttal was improper:

> "[Prosecutor]: Those field sobriety tests. Officer Garza had tried to ask the defendant questions. He tried to get an investigation going and the defendant refused. I mean, if you are being accused of something that you didn't do, you would want to do everything you can to throw it back in the officer's face and say, 'You're wrong.'"

Defense counsel objected to those statements contending that the prosecutor improperly shifted the burden to defen-dant and commented on defendant's silence. The trial court overruled defense counsel's objections, and defendant renews that argument on appeal.

Because defendant objected to those comments, we review the "trial court's decision to overrule an objec-tion to closing arguments for abuse of discretion." *State v. Totland*, 296 Or App 527, 531, 438 P3d 399, *rev den*, 365 Or 502 (2019). "But we review whether a prosecutor's argu-ments were improper for legal error." *State v. Irish*, 340 Or App 341, 345, ___ P3d ___ (2025). We must reverse if the "argument was improper, properly challenged, and likely to

prejudice the jury unfairly." *State v. Schneider*, 328 Or App 697, 700-01, 538 P3d 1233 (2023) (internal quotation marks omitted).

The prosecutor's comments were improper for two reasons. First, they distorted the burden of proof. A prosecutor may "persuade the jury that it should believe one version of events and not another." *State v. Purrier*, 265 Or App 618, 620-21, 336 P3d 574 (2014). However, a prosecutor may not "inappropriately characterize the jury's fact-finding function in a manner that raises some realistic possibility of confusing the jurors about the ultimate standard of proof." *Id.* at 621; *see State v. Perez*, 373 Or 591, 619, 568 P3d 949 (2025) (Bushong, J., concurring) (observing that "a prosecutor should never argue or suggest to the jury that the defendant has the burden of proving anything, except when the law places the burden of proving an affirmative defense on the defendant").

The prosecutor's comments—"if you are being accused of something that you didn't do, you would want to do everything you can to throw it back in the officer's face"— suggested that defendant was obligated to offer evidence to refute the state's own evidence. That is, the underlying premise of the prosecutor's comments implied that defendant had the burden to produce evidence or explain why he did not "throw [the accusations] back in the officer's face." That was improper because it raised a "realistic possibility of confusing the jury about the ultimate standard of proof." *Totland*, 296 Or App at 531; *see, e.g.*, *Irish*, 340 Or App at 349 (explaining that the prosecutor's comments "suggesting to the jury that [the] defendant's choice not to present additional evidence [that] *** might support the state's theory rather than the defense's theory" was improper); *State v. Howard*, 337 Or App 675, 680, 564 P3d 494 (2025) (explaining that "when the burden of proof rests with the state, it is improper for a prosecutor to suggest that the defendant carries a burden to submit evidence"); *State v. Solis*, 326 Or App 60, 62-63, 530 P3d 537 (2023) (concluding that the prosecutor's comment, "*if that's something he wanted you to consider, he would have had to give you some evidence on it*" improperly shifted the burden to the defendant (emphasis

in original)). *Cf. Totland*, 296 Or App at 532 (explaining that the prosecutor's comment—that the defendant "'choos[ing] to keep evidence from the jury" by not completing the FSTs after he had started those tests—was proper when understood in context).

Second, the prosecutor's argument was also improper because it encouraged the jury to draw an improper inference based on defendant's right to remain silent and it likely led the jury to draw a prejudicial inference based on that right. *See State v. House*, 282 Or App 371, 379, 385 P3d 1099 (2016) (explaining that to "determine whether it is reversible error to admit evidence of a defendant's exercise of his or her rights, we look to the likelihood that the jury would draw a prejudicial inference"). "There is no doubt that it is usually reversible error to admit evidence of the exercise by a defendant of the rights which the constitution gives," such as the right to remain silent. *State v. Smallwood*, 277 Or 503, 505-06, 561 P2d 600, *cert den*, 434 US 849 (1977).

In this case, the prosecutor's argument improperly invoked defendant's right to remain silent by arguing to the jury that defendant's noncooperation with the investigating officer, and his unwillingness "to throw" the DUII accusations "back in the officer's face," was evidence of his guilt. *See State v. Ashbaugh*, 330 Or App 680, 689-90, 544 P3d 414, *rev den*, 372 Or 588 (2024) (concluding that the prosecutor's argument "reinforced a suggestion * * * that an innocent person would have been more forthcoming when questioned by the police" gave rise to an adverse inference of guilt that deprived the defendant of a fair trial). The trial court did not take any steps to ensure that the jury would not draw any prejudicial inferences, which exacerbated the error. *House*, 282 Or App at 379. And the error was compounded because the prosecutor then underscored defendant's unwillingness to cooperate: Following defense counsel's objection, the prosecutor argued that "the whole point * * * [of] these tests are meant to prove an officer wrong," again suggesting that the jury should take defendant's failure to "prove an officer wrong" as evidence of his guilt.

Because the prosecutor's argument not only shifted the burden to defendant, but also encouraged the jury to

draw an improper inference from defendant's exercise of his right to remain silent, the "trial court abused its discretion in overruling defendant's objection and should have taken corrective action." *Solis*, 326 Or App at 62; *see Perez*, 373 Or at 618 (Bushong, J., concurring) (explaining that a prosecutor "should not be making" comments that reference a defendant's constitutional right, and "[i]f they do, defense attorneys should object, and trial courts should sustain the objection and, at a minimum, instruct the jury to disregard the comment"). Accordingly, defendant was denied a fair trial, and we reverse and remand.

We address defendant's first four assignments of error as they are likely to arise on remand. In his first three assignments of error, defendant contends that the trial court erred in admitting his refusal to perform an FST and a breath test as evidence of guilt. Prior to trial, defendant moved to suppress his refusals to perform the breath test and FSTs under Article I, section 9, of the Oregon Constitution. The trial court determined that defendant's first refusal to perform FSTs and his first refusal to perform the breath test were inadmissible. However, it ruled that the other refusals were admissible. On appeal, defendant contends that all of his refusals to perform the breath test and the FSTs should have been suppressed because Garza's requests were ambiguous.

Because breath tests and FSTs are searches within the meaning of Article I, section 9, constitutional protections apply. *State v. Hamilton*, 330 Or App 258, 268, 543 P3d 704 (2024). Refusing to consent to a search, such as a breath test or an FST, "invokes the person's constitutional right to insist that the government obtain a warrant, and thus evidence of the refusal may not be admitted at trial as evidence of their guilt." *Id*. To introduce evidence of a defendant's refusal to perform a breath test or FSTs, the state must demonstrate that the request "could reasonably be understood only as a request to provide physical cooperation and not as a request for constitutionally-significant consent to search." *Id*. at 269 (internal quotation marks omitted). "If the request was ambiguous—that is, if it can reasonably be understood as either asking defendant to physically submit to a test that

was justified by a warrant exception, or as asking defendant for [his, her, or their] consent to search, thereby establishing a warrant exception," then "the state has not met its burden, and evidence of the refusal to perform" a breath test or FST is inadmissible. *Id.* (brackets in original; internal quotation marks omitted).

As to the breath tests, the state met its burden to introduce defendant's refusal because Garza's requests were unambiguous. After Garza read Section 1B of the Implied Consent form, he ordered defendant to "provide physical cooperation and submit to a breath test," to which defendant refused. Because Garza requested only "physical cooperation," his request could not be "reasonably be understood as a request for constitutionally-significant consent to search." *Id.* at 266 (internal quotation marks omitted). *Cf. State v. Banks*, 364 Or 332, 344, 434 P3d 361 (2019) (concluding that the officer's question, "[W]ill you take a breath test," was ambiguous, in part, because "he did not specify the aspect of the implied-consent law to which he was referring.").

We reach the same conclusion as to the FSTs. Garza first asked whether defendant "would mind doing some field sobriety tests." Defendant replied that he would not submit to any FSTs, and the trial court correctly suppressed that refusal because the request was ambiguous. *Id.* Then, Garza, after providing *Miranda* warnings to defendant and briefly stepping away, asked him to submit to "purely physical" tests, read the *Rohrs* admonishment, described the tests, and asked defendant if he still "wish[ed] to not do the tests." Defendant again declined, and the trial court admitted that refusal as evidence. Defendant contends that that refusal also should have been excluded because it was ambiguous.

We conclude that the trial court did not err in concluding that that refusal was unambiguous. After Garza explicitly told defendant that the request was for "purely physical tests," he read the *Rohrs* admonishment (which explained in greater detail that the test was for physical cooperation), and asked if defendant still wished to not do the test. Nothing in that sequence of events or Garza's comments describing the tests rendered the request for physical

cooperation ambiguous. That is, the request could not have reasonably been "understood as a request for constitutionally significant consent to a search." *Banks*, 364 Or at 343. *Cf. State v. Wilson*, 335 Or App 401, 403, 559 P3d 448 (2024) (concluding that the officer's statements—whether defendant "wanted to do a breath test" and whether defendant was "willing to consent to a breath test"—was ambiguous under *Banks*).

Defendant contends that the two incidents described in *Hamilton* are factually identical to his own, and thus require reversal. We disagree. In the first incident described in *Hamilton*, the officer told the defendant that he wanted to administer FSTs and asked:

> "'Is that something that you would voluntarily consent to doing tonight?' After [the] defendant declined, [the officer] continued trying to persuade her, saying 'if you consented to the field sobriety tests and I was to administer those and you don't show indicators of impairment * * * you're going to be able to drive home.'"

330 Or App at 269-70. Similarly, in the second incident, the officer asked if the defendant would "volunteer to do some field sobriety tests," stated "I would really appreciate your cooperation in this," "asked if she 'would mind doing a couple alternative tests,'" and finally "noted that the FSTs were 'voluntary tests' that [the] defendant could refuse." *Id*. at 264, 270. Although the officers did later provide the *Rohrs* admonishment, we concluded that, in those circumstances, the admonishment was "not enough" to demonstrate that officer's requests "could reasonably be understood only as a request to provide physical cooperation." *Id*. at 270-71.

Conversely, here, Garza's initial request, "You mind just doing some field sobriety tests with us," although ambiguous, was isolated. The trial court correctly suppressed the response to that ambiguous request. However, that single statement did not prohibit the officer from clarifying that the request was for physical cooperation in the form of the *Rohrs* admonishment. Unlike the officers in *Hamilton*, Garza did not repeatedly suggest the test was voluntary, nor did he attempt to cajole defendant to voluntarily consent, which would leave the impression that the request was not

merely for physical cooperation but rather a constitutionally significant consent to a search. Instead, he resolved any ambiguity from the initial request by clarifying the request. An alternate result would mean that once an officer asks a defendant to agree to perform FSTs, there would be no steps an officer could take to clarify that the request was for physical cooperation. *See, e.g.*, *State v. Beeson*, 307 Or App 808, 825, 479 P3d 576 (2020), *adh'd to on recons*, 309 Or App 787, 482 P3d 821 (2021) (observing that "belated *Miranda* warnings, in certain contexts, can effectively cure an earlier violation"). Accordingly, we reject defendant's first three assignments of error.

In his fourth assignment of error, defendant contends that the trial court erred in admitting the recording of off-duty officer Croissant's phone call to 9-1-1. The trial court admitted the recording under the excited utterance exception to the hearsay rule. "We review a trial court's legal conclusion that a statement was admissible under the excited utterance exception to hearsay for legal error." *State v. Underwood*, 266 Or App 274, 275, 337 P3d 969 (2014). And we "review the trial court's factual finding that the statement was made while under the stress of excitement caused by a startling event to determine whether evidence in the record supports that finding." *Id.*

The evidentiary record supports the trial court's determination that Croissant was under the stress of excitement. *See* OEC 803(2) (requiring a declarant to be under the stress of excitement for the excited utterance exception to apply). Croissant was perceiving a startling event as evidenced by his statements during the phone call—"a vehicle swerving all over the road," and the driver is "running red lights." *See State v Carlson*, 311 Or 201, 216, 808 P2d 1002 (1991) (observing "the very nature of the event or condition (*e.g.*, *** an automobile accident) will indicate its startling character"). And his reaction to that event—following the vehicle while contemporaneously describing the events—is sufficient to support the trial court's finding that the recording was made under the stress of excitement. *See id.* at 218 (explaining that criteria "that bear on the trial court's determination of the spontaneity of the utterance are lapse

of time, place, content of the utterance, physical or mental condition of the declarant, whether made in response to an inquiry, and presence or absence of a motive to fabricate" (internal quotation marks omitted)). Although defendant points to Croissant's "even-tone" as evidence that he was not in an excited state, the existence of evidence to the contrary does not mean that there was no evidence supporting the trial court's decision. *Id.* at 218-19. Accordingly, we reject defendant's fourth assignment of error.[2]

Reversed and remanded.

---

[2] Defendant's sixth assignment of error challenges the imposition of community service; we need not address that argument which may not arise on remand.