372 May 6, 2026 No. 391

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CHARLES BERNARD LAYTON,
aka Charles Layton, aka Charles Bernard Layton, Jr.,
*Defendant-Appellant.*

Jackson County Circuit Court
20CR21516; A181485

Laura A. Cromwell, Judge.

Submitted July 9, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Francis C. Gieringer, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Philip Thoennes, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Defendant appeals a judgment of conviction, entered after a conditional guilty plea, for one count of driving under the influence of intoxicants, ORS 813.010. In a single assignment of error, he challenges the trial court's denial of his motion to suppress, advancing two arguments. First, defendant contends that the arresting officer lacked probable cause to stop defendant for failing to maintain a lane, and therefore, the trial court was required to suppress all evidence obtained in the course of the traffic stop. Second, he argues that his refusal to perform field sobriety tests (FSTs) was inadmissible because his refusal could have been understood as an invocation of his constitutional right to refuse to consent to a warrantless search. Reviewing for legal error and accepting the trial court's factual findings that are supported by the record, *State v. DeJong*, 368 Or 640, 643, 497 P3d 710 (2021), we conclude that the trial court did not err. We therefore affirm.

*Probable Cause*: Defendant first argues that the officer lacked probable cause to stop defendant for failing to maintain a lane after the officer observed defendant's passenger-side tires cross "completely over the bicycle lane line."[1] In support of that argument, defendant relies on *State v. Little*, 326 Or App 788, 533 P3d 1107 (2023), in which we recognized that a *de minimis* deviation from the lane of travel is insufficient to establish that a driver has failed to drive within a lane under ORS 811.370. *Id.* at 794. In that case, the officer observed a single rear tire of the defendant's vehicle cross the fog line by approximately six inches for roughly 1.5 seconds while the defendant was making a turn. *Id.* at 790. We concluded that such a "momentary and minor" lane deviation is not a violation of ORS 811.370, and thus, the officer lacked probable cause to stop the defendant. *Id.* at 795.

---

[1] After the officer activated his emergency lights, defendant did not immediately pull over, and the officer observed defendant "fail to maintain his lane a number of times" before defendant eventually pulled into a parking lot. However, the parties agree, as do we, that under the facts presented here, defendant was stopped within the meaning of Article I, section 9, of the Oregon Constitution, when the officer activated his overhead lights, at which point, the officer had observed only a single lane deviation. *See, e.g.*, *State v. Loud*, 149 Or App 250, 253, 942 P2d 814, *rev den*, 326 Or 58 (1997) (concluding that a stop occurred when the police activated their emergency lights).

Here, we disagree with defendant that his crossing into the bicycle lane was only a *de minimis* deviation from the lane of travel. As we have explained, in some circumstances, "a single digression from a traffic lane can provide probable cause to believe a driver has committed the offense of failure to stay within a lane." *State v. Koteen*, 344 Or App 527, 533, 581 P3d 139 (2025) (internal quotation marks omitted). Although the officer observed only a single deviation from the lane before activating his overhead lights, we conclude that the officer's observation that both of defendant's passenger-side tires had crossed "completely" over into the bicycle lane was sufficient to provide the officer with probable cause to stop defendant. *See id.* at 529, 533 (concluding that an officer had probable cause to stop the defendant for failing to maintain a lane where the vehicle's passenger-side tires abruptly crossed into a bicycle lane for about two seconds and occupied about half of the lane); *see also State v. Husk*, 288 Or App 737, 740-41, 407 P3d 932 (2017), *rev den*, 362 Or 665 (2018) (concluding that an officer had probable cause to stop the defendant for failing to maintain a lane where her vehicle "briefly" "straddled" the dividing line of two lanes).

*Defendant's Refusal to Perform FSTs*: Defendant also argues that the trial court erred by failing to suppress his refusal to perform FSTs. In particular, he contends that the officer's request that defendant perform FSTs could be construed as a request for constitutionally significant consent to search, and accordingly, defendant's refusal to consent is inadmissible.

A defendant's refusal to perform FSTs is admissible "if the state proves that law enforcement's requests to perform the tests could be understood only as a request to submit to the physical act, and not as a request that [the] defendant provide constitutionally significant consent to the tests." *State v. Hamilton*, 330 Or App 258, 260, 543 P3d 704 (2024). In *Hamilton*, during two separate traffic stops, officers repeatedly asked the defendant to "consent" and "volunteer" to perform FSTs before informing her that the tests were "purely physical" and reading her the so-called *Rohrs*

admonishment.[2] *Id.* at 261-63. Because the officers used language that could have been interpreted as a request that the defendant voluntarily consent to a search, her refusal to perform the FSTs was inadmissible against her. *Id.* at 270.

Defendant contends that *Hamilton* controls. We disagree. Recently, in *State v. Anderson*, 341 Or App 756, 574 P3d 969 (2025), we distinguished an officer's request that a defendant perform FSTs from the requests in *Hamilton*. In *Anderson*, the officer asked the defendant, "You mind just doing some field sobriety tests with us?" 341 Or App at 757 (internal quotation marks omitted). After the defendant declined, the officer stated that the tests were "purely physical" and read the defendant the *Rohrs* admonishment. *Id.* We concluded that, although the officer's initial, isolated request to perform FSTs may have been ambiguous, the officer permissibly clarified that the request was for physical cooperation, and the officer did not otherwise attempt to persuade or cajole the defendant to voluntarily consent. *Id.* at 763-64.

Here, the officer made a nearly identical request to defendant and asked, "Would you mind taking a few tests so I can make sure you're safe to drive?" Defendant declined, and the officer stated, "I just have to make a *** decision based on our conversation, and I don't want to do that. I would rather have you prove to me that you've had nothing to drink." When defendant refused, the officer read him *Miranda* warnings and the *Rohrs* admonishment, stating "I'm going to ask you to submit to purely physical [FSTs]," and then the officer described each FST. We conclude, as we did in *Anderson*, that even to the extent the officer's initial request was ambiguous, the officer subsequently clarified that his request was only for defendant's physical cooperation. In the course of their conversation, the officer did not ask for defendant's "consent," and he did not otherwise attempt to persuade or cajole defendant to voluntarily take the tests. Accordingly, the trial court did not err.

Affirmed.

---

[2]  The "*Rohrs* admonishment" is a warning that a refusal to submit to non-testimonial, physical tests may be used against a defendant in court. *State v. Rohrs*, 157 Or App 494, 499, 970 P2d 262 (1998), *aff'd*, 333 Or 397, 40 P3d 505 (2002).